**Amy Marie DAVIDSON, Appellant,**

v.

**Robert A. FISHER, Jr., Respondent.**

**No. WD 61150.**

Missouri Court of Appeals,
Western District.

Feb. 4, 2003.

James Anthony Nadolski, St. Joseph, MO, for Appellant.

John Roger Brage, St. Joseph, MO, for Respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH, and RONALD R. HOLLIGER, JJ.

JAMES M. SMART, JR., Judge.

Amy Marie Davidson appeals the ruling of the trial court granting primary physical custody of Hayley Fisher to Robert Fisher. She contends on appeal that the court's findings were inadequate and that the ruling was against the weight of the evidence. We affirm the judgment of the trial court as to custody, but we remand for adoption of an adequate parenting plan.

### Factual Background

Amy Marie Davidson ("Mother") gave birth to a girl, Hayley Fisher ("the child"), in February 1999. The child's father is Robert Fisher ("Father"). Mother and Father have never been married. Mother and Father lived together for four months after the child's birth, and then Father abandoned Mother and the child. Soon afterwards Mother and the child were evicted when Mother could not pay the household bills. Mother lived with rela-

tives until March 2000, when she obtained her own residence. The child remained with Mother during this period. Father did not provide any child support.

In the summer of 2000, Father began cohabiting with Amanda Jones. Father and Amanda have a child, born in August 2001. Father's work history is unstable, with numerous job changes and periods of unemployment. Amanda does not work outside the home. Father and Amanda live in a small two-bedroom trailer.

Mother is an assistant manager at a restaurant and resides in a duplex. Mother began dating Michael Emery in 2000. Emery had a violent disposition and a criminal record. Emery set fire to Mother's vehicle and physically assaulted her. In October 2000, Mother decided to leave the child with Father and Amanda until her problems with Emery were resolved.

When the child returned to Mother's care is not clear. Mother claims that within two weeks the child returned to her house, except for daytime visits with Father and Amanda while Mother worked. Father claims that Mother left the child with him full-time from October 2000 until July 2001. The evidence showed that the child was at Father's house almost daily during that time period.

During this time period, Mother continued to have contact with Emery, despite the fact that she had earlier sought a protective order against him. She became pregnant with his child in April 2001 and gave birth in December 2001. In April 2001, Emery was charged with physically

assaulting Mother and another woman. Mother testified against Emery at trial. Emery received a sentence of four months in jail. After his release, according to Mother, Emery and Mother did not continue their relationship. Emery's visitation with his child took place at his parent's house.

In July 2001, while Emery remained incarcerated, both Mother and Father filed petitions for custody. There had been no prior custody determination. Father claims that Mother had begun restricting his access to the child. Mother claimed that Father had threatened to take the child away from her. The Circuit Court of Buchanan County held a hearing, and on February 5, 2002, granted custody to Father and visitation to Mother. Mother now appeals.

## Required Findings

■ Mother first argues that the trial court erred in granting Father custody because the award was contrary to law. Mother contends that the Court did not consider the relevant factors set forth in § 452.375.2, RSMo 2000, as required.

This was the original custody ruling. Mother and Father could not agree on a custodial arrangement. Missouri law provides that:

> If the parties have not agreed to a custodial arrangement ... the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of [§ 452.375][1]

1. Subsection 4 of § 452.375 provides that:
 The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of

the child, and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both par-

and each of the factors listed in subdivisions (1) to (8) of section 2 of [§ 452.375] detailing the specific relevant factors that made a particular arrangement in the best interest of the child.

§ 452.375.6, RSMo 2000. Subsection 2 of § 452.375 provides that:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that

best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

Mother argues that the court erred because it did not enter findings of fact relating to all eight factors delineated in § 452.375. The court entered the following findings of fact relating to child custody:

6. Plaintiff Amy Marie Davidson and her mother have acted to deny Defendant Robert A. Fisher, Jr. contact and visitation with Hayley Marie Fisher during the year 2001. The court finds that Defendant Robert A. Fisher, Jr. is the parent most likely to afford the other parent frequent, continuing and meaningful visitation.

7. Plaintiff Amy Marie Davidson has, and may yet remain, the object of an abusive relationship with a former paramour, Michael Emery, a person with whom she shares a minor child. That child presently resides in the household of Plaintiff Amy Marie Davidson. The court finds that the exercise of visitation by Plaintiff Amy Marie Davidson of Hayley Marie Fisher in the presence of Michael Emery would endanger Hayley Marie Fisher's physical health or impair her emotional development.

8. After considering the relevant factors set forth in RSMo 452.375.2(1–8), the court finds that the best interests of the minor child, Hayley Marie Fisher, would be served by the creation of a joint legal custodial relationship un-

ents participate in such decisions and have frequent, continuing and meaningful con-

tact with their children so long as it is in the best interests of the child.

der which Defendant Robert A. Fisher, Jr. would be designated as primary physical custodian. Plaintiff Amy Marie Davidson will have reasonable rights of visitation as set forth below.

A court is required to detail "the *specific relevant factors* that made a particular arrangement in the best interest of the child." § 452.375.6 (emphasis added). Here, the court discussed the two factors it considered the most relevant. First, the court determined that Father was more likely to allow frequent, continuing and meaningful contact between the child and the non-custodial parent, which addresses factor 4 of § 452.375.2. Second, the court determined that Mother's relationship with Michael Emery might constitute a danger to the child, which addresses § 452.375.4 and factors 3 and 6 of § 452.375.2. These determinations provided support for the trial court's decision to award custody to Father.

In this case, it is evident that factor (1) (wishes of the child's parents) is not material to the custody decision. Each parent wants custody. Factor (3) (relationships with parents, siblings and others) overlaps factor (2) (need for parental involvement and willingness of parents) in this case because there are no other persons with whom child has bonded to be specifically considered. Factor (5) (child's current adjustment) is not key in that the child has spent substantial time in both Father's and Mother's home and was apparently well-adjusted to both homes. Factors (7) and (8), relating to possible relocation and the desire of the child respectively, are not pertinent here. Thus, here the pivotal factors in the court's mind were (2), (4) and (6), as to which the court entered written findings.

The purpose of the statutory revision was to assure that all pertinent consider-ations were described by the trial court so as to allow for more meaningful appellate review. We find no authority specifically deciding that the trial court must specifically *discuss* each of the eight factors listed in § 452.375.2, whether the trial court deems them all pertinent or not. Mother cites *Brandow v. Brandow*, 18 S.W.3d 584 (Mo.App.2000), arguing that the decision in this case must be vacated for lack of specific findings. The court in *Brandow* held that if the written findings required by § 452.375 are not made, the appellate court will remand to the trial court for the findings to be made. *Id.* at 588. In *Brandow*, the trial court had neglected to make any findings. This case differs in that the trial court in this case made specific relevant findings. Thus, we hold the award of custody is in compliance with § 452.375.

## Weight of the Evidence

 Mother next argues that the trial court's decision was against the weight of the evidence and was not supported by substantial, credible evidence. "An appellant seeking to reverse a trial court's ruling concerning custody of a child has to overcome a high standard of review." *Welch v. Welch*, 12 S.W.3d 712, 713 (Mo. App.1999). This court must affirm the decision of the trial court in a custody dispute, unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. *Couch v. Couch*, 978 S.W.2d 505, 510 (Mo.App.1998). In a child custody case, more so than in other civil cases, the appellate court gives great deference to the trial court's decisions. *Parker v. Parker*, 66 S.W.3d 778, 786 (Mo. App.2002). It is presumed that the trial court reviewed all the evidence and awarded custody in light of the best interest of the child. *Miers v. Miers*, 53 S.W.3d 592, 596 (Mo.App.2001). The presumption is based upon the trial court being in a better

position to evaluate the credibility of witnesses than an appellate court. *Id.* The resolution of conflicting evidence is left to the trial court. *Id.* An appellate court will not disturb a custody ruling unless it is "firmly convinced" that the welfare of the child requires some other disposition. *Id.* at 595.

The trial court found that Mother had denied Father access to the child. We note that Mother certainly did not have a history of denying access to Father. There was evidence that she did deny access after she became concerned that Father would seek custody. While we understand Mother was acting out of fear, we recognize the fact that there was evidence to support this factor. The court also found that Mother's relationship with the abusive Michael Emery posed a danger to the child. The evidence shows that Mother, even after Emery's violent tendencies were clear and she had obtained one protective order, again voluntarily became involved with Emery. This evidence made Mother appear to lack the judgment and willpower to avoid repeating the same mistakes. The trial court was properly concerned about the welfare of the child in light of Emery's lack of self-control, poor character, and criminal background. While Mother may, at the time of trial, have substantially removed Emery from her life, there was evidence from which the court could have reasonably been concerned that Mother would again take up with Emery. Mother had previously endured violent episodes with Emery, and yet she continued to allow him in her life. In fairness to Mother, we note that, apart from Mother's recent tendency to deny access to father and her involvement with the abusive and violent Michael Emery, the record speaks relatively well of Mother's commitment to her daughter. Father, in contrast, had a less than impressive history of commitment, until relatively recently. Nevertheless, we cannot say there was not substantial evidence in the record to support the trial court's findings. There was evidence that, at the present time, Father's home was an acceptable alternative, as long as the child is allowed substantial time with Mother (absent Michael Emery). Because we owe great deference to trial court determinations in custody cases, and because there was evidence that Mother's cycle of involvement with Emery was dangerous, we believe we cannot say we are firmly convinced that the welfare of the child requires a different disposition. *Miers,* 53 S.W.3d at 595.

■ While not an issue raised by the parties, this court notes that the trial court's parenting plan is deficient. Section 452.375.9 states that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." Section 452.310.7 states:

> The proposed parenting plan shall set forth the arrangements that the party believes to be in the best interest of the minor children and shall include but not be limited to:
>
> (1) A specific written schedule detailing the custody, visitation and residential time for each child with each party including:
>
> > (a) Major holidays stating which holidays a party has each year;
> >
> > (b) School holidays for school age children;
> >
> > (c) The child's birthday, Mother's Day and Father's Day;
> >
> > (d) Weekday and weekend schedules and for school age children how the winter, spring, summer and other vacations from school will be spent;
> >
> > (e) The times and places for transfer of the child between the parties in

connection with the residential schedule;

(f) A plan for sharing transportation duties associated with the residential schedule;

(g) Appropriate times for telephone access;

(h) Suggested procedures for notifying the other party when a party requests a temporary variation from the residential schedule;

(i) Any suggested restrictions or limitations on access to a party and the reasons such restrictions are requested;

(2) A specific written plan regarding legal custody which details how the decision-making rights and responsibilities will be shared between the parties including the following:

(a) Educational decisions and methods of communicating information from the school to both parties;

(b) Medical, dental and health care decisions including how health care providers will be selected and a method of communicating medical conditions of the child and how emergency care will be handled;

(c) Extracurricular activities, including a method for determining which activities the child will participate in when those activities involve time during which each party is the custodian;

(d) Child care providers, including how such providers will be selected;

(e) Communication procedures including access to telephone numbers as appropriate;

(f) A dispute resolution procedure for those matters on which the parties

disagree or in interpreting the parenting plan;

(g) If a party suggests no shared decision-making, a statement of the reasons for such a request;

(3) How the expenses of the child, including child care, educational and extraordinary expenses as defined in the child support guidelines established by the supreme court, will be paid including:

(a) The suggested amount of child support to be paid by each party;

(b) The party who will maintain or provide health insurance for the child and how the medical, dental, vision, psychological and other health care expenses of the child not paid by insurance will be paid by the parties;

(c) The payment of educational expenses, if any;

(d) The payment of extraordinary expenses of the child, if any;

(e) Child care expenses, if any;

(f) Transportation expenses, if any.

■ Both Mother and Father submitted proposed parenting plans to the trial court. In order to prevent courts from being clogged with minor custody and visitation disputes, the trial courts must adopt complete and comprehensive parenting plans. Mother's parenting plan contained all the arrangements required by § 452.375.9 and § 452.310.7. Father's proposed parenting plan did not contain many of the arrangements required.[2] The trial court adopted Father's parenting plan with no modifications.

Father's parenting plan is clearly inadequate. The parenting plan provides little guidance for resolution of disputes between the parents that will eventually

---

2. Father's parenting plan neglected to address § 452.310.7, sections (1)(c), (1)(e), (1)(f), (1)(g), (1)(h), (1)(i), (2)(e), (2)(f), and (3).

arise. Further, we note that the court found that the exercise of visitation by Mother in the presence of Michael Emery would endanger the child's physical health or impair her emotional development, but the court did not specifically limit Mother's contact with Emery during the periods of visitation. Presumably, this was an oversight. Because the case must be remanded anyway for purpose of adopting a comprehensive parenting plan, the court will want to revisit the issue of Michael Emery's presence and, if still appropriate to do so, the court will presumably wish to add a limitation related to Emery on Mother's visitation with the child.

### Conclusion

This case is remanded to the trial court in order for the court to adopt a parenting plan in compliance with § 452.375.9, and to adopt a visitation limitation related to Mother's contact with Michael Emery.

ULRICH and HOLLIGER, JJ., concur.