157 S.W.3d 268 (2005)
STATE of Missouri, ex rel., the STATE OF KANSAS SOCIAL AND REHABILITATION SERVICES and D.K.M., et al, Petitioners-Respondents,
v.
R.L.P., Respondent-Appellant.
No. 25595.
Missouri Court of Appeals, Southern District, Division One.
January 12, 2005.
Motion for Rehearing or Transfer Denied February 4, 2005.
*271 Kenneth W. Johnson, Twibell, Johnson, Johnson, Scott & Garrison, Springfield, for appellant.
Richard L. Schnake, Neale & Newman, L.L.P., Springfield, for respondent.
PHILLIP R. GARRISON, Judge.
R.L.P. ("Father") appeals a judgment entered by the trial court awarding custody of A.L.M., J.L.P., and K.K.P. (the "children") to D.K.M. ("Mother"). He contends that the judgment was erroneous because it was entered without requiring the appointed guardian ad litem to make a report of his investigation and recommendations concerning the best interests of the children, and also because the trial court failed to make sufficient findings concerning the childrens' best interests. We reverse and remand the case for a new trial.
Mother and Father met in 1989 and lived together with occasional separations until July 2001. Although never married, three children were born to them during those years: A.L.M., born July 23, 1995; J.L.P., born September 22, 1999; and K.K.P., born November 3, 2000. Father and Mother had a rather tumultuous relationship that was periodically interrupted by Mother living with her parents in Kansas and later returning to the homes they shared at various times. According to Father, Mother would sometimes beat his daughter from a prior relationship, who was living with them at the time, and he also said that he had threatened to report Mother to Family Services for beating A.L.M. Mother testified that Father only sporadically participated in parenting the children, had problems with alcohol abuse, had used marijuana, was physically abusive to her, and had been jailed for probation violation. Nevertheless, Mother testified that there "were times when things were really good," and she would return because she loved Father and he repeatedly promised that he would stop or reduce his drinking and would seek counseling.
On July 9, 2001, Mother moved, with the children, to her parents' home in Kansas. Contemporaneously with that, she filed a petition seeking a determination of paternity as to the three children, custody and support of the children, and a distribution of property accumulated during the time she and Father cohabited. Father filed an answer and counterclaim in which he also sought determinations that he is the biological father of J.L.P. and K.K.P.,[1] he sought custody of the three children, and he sought child support. Mother filed an amended petition in which she sought a judgment awarding "joint legal custody of the minor children, with [her] having primary physical custody, and [Father] reasonable *272 visitation,"[2] as well as determinations of paternity and child support. She also sought a partition of the personal property. A guardian ad litem was appointed to represent the interests of the children.
After hearing evidence in the case, the trial court entered its "Findings and Final Judgment" in which it found that Father was the biological father of all three children; it awarded sole legal and physical custody of all three children to Mother; awarded visitation to Father as detailed in a "Parenting Plan"; and ordered Father to pay child support.[3] Father appeals.
Initially, it is necessary that we consider a motion to dismiss filed by Mother. After the filing of the notice of appeal in this case, Father filed a motion to modify in which he sought to modify child support and visitation. Thereafter, Mother and Father filed a stipulation in which they agreed that, based upon a change of circumstances, the child support and visitation ordered in the earlier judgment would be modified. Based on the stipulation and factual affidavits of the parties, the trial court entered a "Judgment of Modification" modifying the child support and visitation as agreed to by Mother and Father.
Mother claims that by moving to modify the original judgment, and by stipulating to its modification, Father acknowledged the validity of that judgment and acquiesced in it. She also contends that this appeal is thereby moot. Consequently, she argues that Father's appeal should be dismissed. In support, she cites Schulte v. Schulte, 949 S.W.2d 225, 226 (Mo.App. E.D.1997), for the proposition that a party may estop himself from taking an appeal by voluntary acts which expressly or impliedly recognize the validity of a judgment. Thus, where a party accepts the benefits of a judgment in his favor or acquiesces in a judgment against him, he waives his right to have it reviewed on appeal. Id. at 227.
Mother argues here that Father's visitation rights and his obligation to pay child support arise only because he did not have custody. Accordingly, she contends that the motion to modify and the later stipulation resolving those issues necessarily presupposed the validity of the underlying custody award which is the subject of this appeal.
The paramount concern, however, with reference to child custody issues is the best interests of the children. Young v. Young, 59 S.W.3d 23, 28 (Mo.App. W.D.2001). It is fitting, therefore, that this court has observed that the general rule pertaining to acquiescence in judgments should not be strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved. Smith v. Smith, 702 S.W.2d 505, 507 (Mo.App. S.D.1985).
Additionally, the fact that Father sought modification of the visitation and child support issues, but not the custody issue, is not necessarily inconsistent. It is true, as pointed out by Mother, that the visitation and child support issues Father sought to modify would not have existed except for the fact that Mother was awarded custody. It does not necessarily follow, however, *273 that an attempt to modify only the visitation and child support issues constitutes a recognition of the validity of the judgment concerning custody.
Different standards are applied in determining custody in an original proceeding than in a modification. In the former, the trial court is required to consider all relevant factors including eight specifically enumerated in § 452.375.2;[4] to determine the custody arrangement that will best assure that both parents have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child pursuant to § 452.375.4; and if, as in this case, the parties have not agreed to a custodial arrangement to include a written finding in the judgment or order based on the public policy in § 452.375.4 and each of the eight factors listed in § 452.375.2 "detailing the specific relevant factors that made a particular arrangement in the best interest of the child." § 452.375.6. In a modification proceeding, however, the trial court is restricted by § 452.410.1 from modifying a prior custody decree unless, among other things, it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. It is thus possible that a parent might not be able to prove the necessary change of circumstances in order to obtain a modification of custody, but could successfully contest the initial custody determination of that issue on appeal.
Additionally, there is a different standard for modifying visitation as opposed to custody. As indicated above, a modification of custody requires a change of circumstances pursuant to § 452.410.1. A modification of visitation, however, is governed by § 452.400.2 under which the standard is the best interests of the child without a precursor finding of a substantial change of circumstances. In re D.M.S., 96 S.W.3d 167, 173 (Mo.App. S.D.2003). Under this comparative analysis, the fact that a parent seeks to modify an award of visitation based on the best interests of a child but does not seek to modify custody does not necessarily constitute a recognition of the custody decree. The same is true with reference to a modification of child support which must be supported by a showing of changed circumstances so substantial and continuing as to make the terms of the original support judgment unreasonable. Section 452.370.1
We hold that Father's modification of the visitation and child support awards was not inconsistent with his appeal of the custody award, and did not constitute a recognition of the latter. Consequently, Father is not estopped from pursuing this appeal. To hold otherwise would place a parent in the position of sacrificing an attack on the initial custody determination in order to modify visitation or child support if the initial custody determination was erroneous but the complaining parent could not meet the burden of modifying such determination. Conversely, a parent wishing to modify a visitation or child support award would be required to forego that procedure in order to maintain an appeal from the initial custody award. Given the different standards involved and the fact that the paramount consideration in custody and visitation determinations is the best interests of the child, we decline, under the circumstances of this case, to dismiss Father's appeal on the basis that his modification proceedings constituted a recognition of the validity of the initial *274 custody determination so as to estop him from pursuing this appeal.
We also find that the modification of the visitation and child support did not, as argued by Mother, cause the appeal from the initial custody determination to be moot. In terms of justiciability, a cause is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001). When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed. Id.
Martin v. Martin, 815 S.W.2d 130 (Mo.App. W.D.1991), cited by Mother, does not compel the conclusion that Father's appeal from the judgment awarding custody is rendered moot by the modification. There, the trial court entered a decree of dissolution disposing of issues relating to property distribution, custody, support, and visitation. Id. at 131. Pursuant to the mother's motion, the trial court entered a decree of dissolution nunc pro tunc changing the visitation schedule, and the father filed a notice of appeal. Id. The judgment relating to visitation was later modified in the trial court, and the appellate court dismissed the appeal pursuant to the mother's motion, holding that it was rendered moot by the trial court's modification of the decree relating to visitation. Id. at 132. Unlike the instant case, in Martin, the visitation schedule, that was set in the decree nunc pro tunc and that was the subject of the appeal, was no longer in place because of the modification. Id. The contrary is true in the instant case; the portion of the judgment awarding custody is still in place and was not changed by the modification.
We conclude that Father is not estopped from pursuing this appeal because of the modification. Likewise, the modification proceedings did not render this appeal moot. Mother's motion to dismiss is denied.
In one of Father's points on appeal, he contends that the trial court's judgment awarding custody of the children to Mother was against the weight of the evidence because in considering the relevant factors pursuant to § 452.375(2), it failed to identify sufficient evidence to support its decision that awarding custody to Mother was in the best interests of the children. Father's contention under this point has merit.
Section 452.375.2 provides:
2. The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

*275 (5) The child's adjustment to the child's home, school, and community;
(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;
(7) The intention of either parent to relocate the principal residence of the child; and
(8) The wishes of a child as to the child's custodian.
Section § 452.375.4 provides, in pertinent part:
The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child,... In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.
Finally, § 452.375.6 provides, in pertinent part:
If the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child.
Where, as here, the parties have not agreed to a custodial arrangement, the trial court is required to make written findings based on the public policy set out in § 452.375.4 and "each of the factors listed in subdivisions (1) to (8) of [§ 452.375.2] detailing the specific relevant factors that made a particular arrangement in the best interest of the child." Section 452.375.6. In this regard, a trial court is not required to discuss each of the eight factors listed in § 452.375.2, unless they are relevant. In re Marriage of Cluck, 121 S.W.3d 271, 273 (Mo.App. S.D.2003). Pursuant to the statutory language of § 452.375.6, however, it is required to detail "the specific relevant factors that made a particular arrangement in the best interest of the child." Davidson v. Fisher, 96 S.W.3d 160, 164 (Mo.App. W.D.2003). The purpose of the statutory requirement is to assure that all pertinent considerations are described by the trial court so as to allow for more meaningful appellate review. Id.
In its judgment awarding sole legal and physical custody of the children to Mother, the trial court stated that it had considered all relevant factors, including the eight listed in § 452.375.2. Although it listed factors (1), (2), (3), and (6) from § 452.375.2, it made no findings with reference to any of them. With reference to factor (4) (which parent is more likely to allow the children *276 frequent, continuing and meaningful contact with the other parent), it found that "Father is more likely than Mother to allow such contact." With reference to factor (5) it found that it was "not a significant factor due to the ages of the children," it recited that no evidence was presented with reference to factor (7) and, with reference to factor (8), it found that it had "not been considered due to the ages of the children." Therefore, the trial court made a finding with reference to only one of the eight factors required by § 452.375 to be considered, and that factor was found in favor of Father. That factor corresponds with the legislative mandate under § 452.375.4 that it is this state's public policy that frequent, continuing and meaningful contact with both parents is in the best interest of the child, except where the court specifically finds that such contact is not in the best interest of the child.
In its judgment, the trial court also noted that Mother had removed the children from the home of the parties in Stone County, Missouri on July 10, 2001, without notice to Father, to Lyons, Kansas where she and the children moved in with her parents, and that she thereafter denied Father visitation and contact with the children until October 11, 2001. It also found:
Due to the friction between the parties exhibited since the commencement of this action with respect to visitation, telephone contact, transference of temporary custody, interference by Mother's parents and disagreements regarding schooling of the eldest child [A.L.M.], together with the removal of the children to the state of Kansas by Mother, a distance of some 400 miles, the court, after considering the public policy established in § 452.375(4) RSMo., finds that both joint legal custody and joint physical custody would be unworkable and contrary to the best interests of the minor children. In his testimony, Father stated that he doubted that the parties would be able to amicably engage in the cooperation necessary for joint legal custody. There was no substantial evidence demonstrating a commonality of belief concerning the parental decisions and or the willingness of the parents to function as a unit in making decisions so that joint legal custody and joint physical custody is not in the best interests of the children.
Nevertheless, the trial court also made the following finding:
In accordance with the public policy of this state as recited in § 452.375.4 RSMo., the court has determined that the following ordered custody arrangement will best assure that both parents participate in decisions affecting the health, education and welfare of their children and resolve disputes involving their children amicably through alternative dispute resolution and have frequent, continuing and meaningful contact with their children so long as it is in the best interest of the children. (emphasis added).
Thus, the trial court made the inconsistent findings that Father was more likely than Mother to allow frequent, continuing and meaningful contact with the other parent, but also found that goal would be best assured by awarding sole legal and physical custody to Mother, a conclusion it found to be in the best interests of the children.
We must affirm the decision of the trial court in a custody dispute unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. Davidson, 96 S.W.3d at 164. We give greater deference to the trial court's decision in a child custody case than in other civil cases, and we presume that the *277 trial court reviewed all the evidence and awarded custody in light of the best interest of the child. Id.
These principles do not, however, permit us to overlook the specific statutory requirements with reference to determining the best interests of the children in a case involving custody of minor children. Here, the trial court made no specific findings in support of its conclusion that the best interests of the children required that custody be awarded to Mother. The lack of findings mandated by the legislature prevents us from making a meaningful review on appeal.
Under other circumstances, we would remand the case to the trial court for the entry of more specific findings in accordance with our discussion of the statutory requirements. See Gross v. Helm, 98 S.W.3d 85, 88 (Mo.App. E.D.2003). In this case, however, the judge who presided over the trial, heard the evidence and observed the witnesses, retired five days after entering the judgment from which this appeal was taken. Under these circumstances, we have no alternative but to reverse the judgment and remand for a new trial because of the lack of findings supporting the trial court's determination that an award of custody to Mother was in the best interests of the children.
In another point on this appeal, Father complains that the trial court erred in awarding custody to Mother without requiring that the guardian ad litem (the "GAL") submit a report of his investigation and recommendations and, as a result, failed to insure that it had a sufficient evidentiary basis for making a determination about the best interests of the children. In support, he contends that the GAL, "as representative of the children" had a duty to investigate the circumstances of the children and parties and weigh all relevant factors as the minor children would weigh them if their judgment was mature and they were not of tender years, and that the GAL failed to fulfill his duties to the children and the court by failing to present to the court any input concerning the best interests of the children.
The record indicates that the GAL in this case visited the home in Kansas where Mother and the children were living; made court appearances for motions; interviewed the older of the children; attended the trial; and examined witnesses. At the conclusion of the evidence, Father's attorney suggested that the trial court either interview the oldest of the children or accept a report from the GAL about his interviews with the child. Mother's attorney objected to the trial court merely accepting a report of the interviews from the GAL, and a time was scheduled for the trial court to interview that child. The GAL orally made a request to the trial court that he be permitted to make a report, to which the trial court responded that "I want the [GAL] to make a report. And I expect the [GAL] will do so. Obviously the Court can't consider that report as anything other than argument, just as counsel would... have the opportunity to argue since he can only present evidence through the same way that parties can present evidence." Later, the trial court stated that "I'll ask the [GAL]  I will allow him time to present a written report after that hearing as well, but I'm thinking in terms of a week or two weeks at the most, so that these matters can be submitted rather promptly."
The record indicates that when the trial court finished its interview with the oldest child, counsel waived closing arguments, electing instead to file written suggestions within twelve days "when the case would be submitted." The judgment entered by the trial court reflects that the attorneys *278 for Father and Mother each filed suggestions and proposed parenting plans within the time set by the court, but the "[GAL] did not submit any suggestions." The trial court entered its judgment two months later, acknowledging in its judgment that no suggestions had been received from the GAL.
Because this case is being reversed and remanded for a new trial, we need not decide whether the failure of the GAL to file a formal report and recommendation was error under the circumstances here. We do note, however, that a GAL's function includes acting as an arm of the trial court in assuring that all of the requisite information bearing on the best interests of the children will be presented for consideration. In re Marriage of Sisk, 937 S.W.2d 727, 733 (Mo.App. S.D.1996). While the GAL is not required to make an explicit recommendation as to child custody, it is imperative that he investigate and have input on the perspective of the child's best interest and that this be presented to the trial court. Baumgart v. Baumgart, 944 S.W.2d 572, 579 (Mo.App. W.D.1997). Such presentation can be made, however, through active participation in the proceedings without the necessity of a formal, explicit recommendation. Guier v. Guier, 918 S.W.2d 940, 952 (Mo.App. W.D.1996). Even if a formal recommendation is made, the trial court is not bound by and may accept, modify or reject the GAL's recommendations as it deems appropriate. Sisk, 937 S.W.2d at 733.
The judgment of the trial court determining custody of the children is reversed and the case is remanded for a new trial.
PREWITT, J., and BARNEY, J., concur.
NOTES
[1] There had been an earlier judicial determination that Father was the biological father of A.L.M.
[2] As noted in LaRocca v. LaRocca, 135 S.W.3d 522, 524 (Mo.App. E.D.2004), § 452.375.1 defines "custody" as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof," but does not employ the term "primary physical custody."
[3] The Honorable William J. Kirsch, the trial judge in this case, retired five days after entering the judgment from which this appeal flows. He was replaced by the Honorable Alan Blankenship.
[4] All references to statutes are to RSMo (2000) unless otherwise indicated.