**Sherry M. HUBER, A Minor Child By Her Next Friend, Brianna R. BOOTHE, Plaintiff,**

**Brianna R. Boothe Individually, Appellant,**

v.

**Brian HUBER, Respondent.**

No. WD 64672.

Missouri Court of Appeals, Western District.

Nov. 1, 2005.

Jeremiah Kidwell, Kansas City, MO, for Appellant.

Brent Lee Winterberg, Kansas City, MO, for Respondent.

Before ROBERT G. ULRICH, P.J., PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Brianna R. Boothe appeals the judgment of the trial court in a paternity suit granting joint custody of her daughter, Sherry M. Huber, to her and the child's father, Brian J. Huber. In the petition and at trial, allegations of sexual abuse by Brian Huber against Sherry were raised. The trial court did not make any findings of fact. The court awarded joint legal and physical custody. The court ordered Mr. Huber to pay child support. We reverse and remand for lack of findings.

## Factual Background

Sherry Huber is the only child of Brianna Boothe, appellant, and Brian Huber, respondent. Ms. Boothe and Mr. Huber were never married but lived together intermittently through their ten year relationship, including a period of time after Sherry's birth in May 2000. They separated for the final time in June 2002.

Ms. Boothe brought a petition seeking a declaration of paternity and sole custody of Sherry. Mr. Huber filed a counter-motion seeking joint custody of Sherry. A bench trial was held in May 2004. At the three-day trial, nine witnesses testified including both parents. The seven non-party witnesses included a therapist who examined Sherry; Ms. Boothe's sister who testified to comments Sherry made to her about alleged abuse by Mr. Huber; two social workers who investigated reports of abuse against Sherry; the coordinator at the children's advocacy center who interviewed Sherry; the assistant director at Sherry's daycare; and a friend of both Ms. Boothe and Mr. Huber who observed an incident involving Mr. Huber, Sherry, and her daughter, Kendall Green. All seven of these witnesses testified in some manner or another about sexual abuse allegations. The Guardian Ad Litem did not testify but examined some of the witnesses.

Findings and recommendations were made by the commissioner in August 2004. The court's judgment was handed down on September 1, 2004. The court determined that Mr. Huber was Sherry's biological father, awarded joint legal and joint physical custody to both parents, and ordered Mr. Huber to pay child support to Ms. Boothe. The court did not make any findings related to the sexual abuse allegations. Nor did the court make any findings as to other factors related to the best interest of the child. We reverse and remand for findings.

## Standard of Review

As in other court-tried cases, we will affirm the trial court's judgment unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Loumiet v. Loumiet*, 103 S.W.3d 332, 335–36 (Mo.App.2003) (*citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The trial court is afforded broad discretion in awarding child custody, and we will affirm its decision unless we are firmly convinced that the welfare of the child requires a different disposition. *Id.* at 336. The trial court determines what is the best interest of the child in a child custody dispute, and the court of appeals determines whether the record contains sufficient evidence to support the trial court's assessment. *Couch v. Couch*, 978 S.W.2d 505, 510 (Mo.App.1998). Every case has its own distinctive features and must be reviewed in light of its own unique set of facts. *Horton v. Horton*, 961 S.W.2d 67, 69 (Mo.App.1997).

## Analysis

Ms. Boothe raises one point on appeal, but the point raises two issues. First, the trial court erred in awarding joint custody because the decision was against the weight of the evidence, which showed that the parents could not share decision-making responsibilities. Second, the trial court erred in awarding joint custody because the decision was against the weight of the evidence, which showed that the child had been sexually abused by the father, Mr. Huber. We consider these issues in reverse order.

## I.

Ms. Boothe's second contention is that the trial court ignored the evidence of sexual abuse, and the custody decision was against the weight of this evidence. Sec-

tions 452.375.2(6)[1] and 452.375.13 outline the procedure for the trial court with relation to assertions of abuse.

Section 452.375.2(6) reads:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

. . . .

The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm[.]

Section 452.375.13 reads:

If the court finds that domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, from any further harm.

While these statutes are similar, there are a couple of differences. First, section 452.375.2(6) requires a showing of a pattern of abuse while section 452.375.13 requires a showing of only a single incident of abuse. *Loumiet,* 103 S.W.3d at 343. Second, the mandated findings of fact and conclusions of law in section 452.375.2(6) require the court to show "(1) it is in the child's best interests to award the abusive parent custody; and (2) the trial court's custody and visitation orders protect the child and the parent or other family or household member who is the victim of domestic violence from any further harm." *Id.* Section 452.375.13 only requires the latter. *Id.*

Where the parties have not agreed to a custodial arrangement, section 452.375.6 requires the court to include written findings in the judgment based on the public policy set forth in section 452.375.4.[2] The court is to consider all relevant factors, including the factors listed in section 452.375.2(1)–(8).[3] *See* § 452.375.6. In

---

1. All statutory references are to Revised Statutes of Missouri 2000, unless otherwise indicated.

2. Section 452.375.4 provides, in relevant part: The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child . . ., and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court

shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

3. Those section 452.375.2 factors are: (1) The wishes of the child's parents as to custody and the proposed parenting plan[s] . . .; (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their [parental] functions . . .; (3) The interaction and interrelationship of the child with parents, siblings, and any

view of the public policy of the State that children should have "frequent, continuing and meaningful contact with both parents," if the parties have not agreed to a custodial arrangement, the court shall include a finding as to the matter of frequent, continuing, and meaningful contact with the parents, and also a finding detailing the specific relevant factors that made a particular arrangement in the best interest of the child. § 452.375.6. Subsection .6 further provides that such findings must be made if the court rejects a proposed custodial arrangement offered by both parents.

■ A court is required to detail "the *specific relevant factors* that made a particular arrangement in the best interest of the child." *Davidson v. Fisher*, 96 S.W.3d 160, 164 (Mo.App.2003) (*citing* § 452.375.6 (emphasis added)). A court is not required to discuss factors that are not relevant. *State ex rel. State of Kansas Soc. & Rehab. Servs. v. R.L.P.*, 157 S.W.3d 268, 275 (Mo.App.2005). However, the court must make findings on the factors that *are* relevant. § 452.375.6 (emphasis added). The purpose for the statutory requirement to detail the factors is to allow for more meaningful appellate review. *Davidson*, 96 S.W.3d at 164.

This court stated in *Brandow v. Brandow*, 18 S.W.3d 584, 587–88 (Mo.App.2000), that whenever "the parties have not agreed to a custodial arrangement, the court is required to include in its judgment a written finding based on the public policy in section 452.375.4 and the factors listed in section 452.375.2(1) to (8), detailing the specific relevant factors that made the cho-

sen arrangement in the best interest of the child." Further, we stated, "the statute requires that if a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment detailing the specific relevant factors resulting in the rejection of the arrangement." *Id.* at 588. If the required finding is not made, the appellate court will remand to the trial court for the findings to be made. *Davidson*, 96 S.W.3d at 164 (*citing Brandow*, 18 S.W.3d at 588).

In *Buchanan v. Buchanan*, 167 S.W.3d 698, 702 (Mo. banc 2005), the parties had agreed on joint physical and legal custody, but they did not agree on the residence address for the child or on a parenting plan. The Court said:

> While these may be sub-issues of custody, they were contested and required the court's resolution. So long as any issue or sub-issue of custody is subject to contest between the parties and resolution by the court, written findings that include discussion of the applicable factors from section 452.375.2 are required.

*Id.* The Supreme Court reversed the judgment and remanded the case for findings. *Buchanan* governs this case. In view of *Buchanan*, we must conclude that the parties here had not "agreed to a custodial arrangement."

In addition to general findings to determine the arrangements in the best interest of the child, "[c]ompliance with the requirements of subsections 452.375.2(6) and 452.375.13 [both of which deal with assertions of abuse] is mandatory." *Dickerson*

---

other person who may significantly affect the child's best interests;
(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....;
(7) The intention of either parent to relocate the principal residence of the child; and
(8) The wishes of a child as to the child's custodian.

*v. Dickerson,* 55 S.W.3d 867, 872 (Mo.App. 2001). "If the record reflects evidence of domestic violence [or abuse], the trial court must make written findings consistent with these statutory provisions." *Id.* "The non-discretionary nature of these provisions reflects the legislature's concern with the problem of domestic violence, and its resolve that the trial court should consider the existence and history of such violence in making its determination of child custody and visitation." *Id.*

▇▇▇ In this case, the trial court failed to make any findings of fact in its custody judgment, and there is no indication in the judgment that a parenting agreement was agreed upon by both parties.[4] The failure to make findings of fact requires reversal and remand under *Buchanan* as the burden is upon the court to issue written findings. *Buchanan,* 167 S.W.3d at 702. The failure in this case to make any findings of fact related to custody hinders our review in that the transcript is filled with testimony relating to sexual abuse allegations. Each of seven non-party witnesses at trial testified in some manner or another about the allegations. "[T]he trial court was required to include in its judgment a written finding based on the public policy in section 452.375.4 and the factors listed in section 452.375.2(1) to (8) detailing the specific relevant factors that made the chosen arrangement in the best interest of the child." *Id.* (*quoting Speer v. Colon,* 155 S.W.3d 60, 61 (Mo. banc 2005)). The judgment not only must include findings of fact for the best interest of the child, but also *must* include findings related to abuse when the evidence supports it. *Dickerson,* 55 S.W.3d at 872.

## II.

Ms. Boothe's first issue is that the trial court erred in awarding joint custody because the decision was against the weight of the evidence, which showed that the parents could not share decision-making responsibilities. As stated above, other than when an agreed-upon parenting plan is adopted by the court, the court must provide written findings detailing the factors showing why the arrangement is in the best interest of the child. *Brandow,* 18 S.W.3d at 587–88. One of the factors included in the best interest analysis is "the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child." § 452.375.2(2). The court failed to make any findings with regard to this factor, or any other factors, in the judgment. Our ability to review the judgment and consider the weight of the evidence is hindered by the lack of findings. Accordingly, we will not attempt review of this second issue in the absence of written findings based upon the factors in section 452.375.2. *Speer,* 155 S.W.3d at 61.

## Conclusion

The judgment is reversed, and the cause is remanded. On remand the trial court shall make the required written findings in compliance with section 452.375.6, and take such other action as deemed appropriate.

ULRICH and BRECKENRIDGE, JJ., concur.

---

4. It should be noted that a change in Rule 78.07, effective January 1, 2005, requires that, "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." This rule change is not applicable in this case because the judgment was issued on August 17, 2004.