**Teri M. McCALLUM,**
**Petitioner/Respondent,**

v.

**Craig D. McCALLUM,**
**Respondent/Appellant.**

No. ED 82132.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 25, 2003.

Application for Transfer Denied
March 30, 2004.

Michael Louis Schechter, Clayton, MO, for appellant.

Charles P. Todt, Tonya Dianne Fiferb, Clayton, MO, Danie P. Card, II, St. Louis, MO, for respondent.

WILLIAM H. CRANDALL, JR., Judge.

Husband, Craig D. McCallum, appeals from the decree of dissolution of his marriage to wife, Teri M. McCallum. We affirm in part and reverse and remand in part.

The parties were married in 1985. Two children were born of the marriage: a son in 1987 and a daughter in 1990. Although the parties separated periodically throughout the marriage, their last separation occurred in December 2000.

Wife worked as a teacher in the State of Washington from 1982 through 1989. With the consent of husband, wife stayed at home with the children after 1989. At the time of trial, she was not certified to teach in either Missouri or Washington. She did have a part-time job as an educational consultant and earned about $6,000.00 per year. During the marriage, wife assumed the primary responsibility for the care of the children, volunteered at their schools, and transported the children to their various extracurricular activities.

Husband was employed in various positions with start-up companies where he received bonuses and stock options. In 1999, he became chief operating officer of a company and earned about $160,000.00 per year. He traveled a great deal with his employment. In 2000, the parties relocated to St. Louis for husband's job. In February 2001, husband took a different job and earned about $150,000.00 annually, with a possibility of a $130,000.00 bonus.

When the parties moved to St. Louis, they started construction on a home for the family. In November 2000, the parties had over $2.9 million in available funds, which consisted mainly of monies from the sale of their home in Washington and from a settlement with one of husband's previous employers. In November, wife took $700,000.00 and used part of it to purchase another home for her and the children. At the time of trial, only $250,000.00 remained of the $2.9 million.

Wife filed the petition for dissolution of marriage in November 2000. The case was tried on October 30 and 31, 2001. In December 2001, wife filed a motion to reopen the evidence based on allegations of husband's misconduct. The court appointed a guardian ad litem (GAL) and scheduled a hearing on the motion for April 1, 2002. Later, the parties, including the GAL, decided not to proceed with the motion.

On July 15, 2002, the court entered judgment, dissolving the parties' marriage. The court, *inter alia*, divided the marital assets; awarded joint legal custody to both parents and primary physical custody to wife; awarded wife $5,500.00 per month in maintenance; awarded wife child support of $1,673.00 per month for both children; allocated 30 percent to wife and 70 percent to husband of the cost of private secondary school; ordered each party to bear a proportion of the children's college costs; and awarded wife $10,000.00 for her attorney's fees. Further, the court found that husband dissipated about $605,000.00 in marital assets and awarded wife one-half of that amount in the division of marital property. The court also imputed income to wife of $24,000.00 per year. Husband filed a motion to amend the judgment in August 2002, requesting, among other things, that the court reconsider the value it placed on a brokerage account. On November 12, 2002, the court entered an amended judgment, but did not change the valuation on the brokerage account. Husband appeals.

▮▮▮ Our review of this case is guided by the principles enunciated in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence. *Deck v. Deck,* 64 S.W.3d 870, 873 (Mo.App. E.D.2002). We recognize the superior position of the court to judge factors such as credibility, sincerity, character of the witnesses, and other intangi-

bles that are not revealed in the transcript. *Id.* The party challenging the dissolution decree has the burden of demonstrating error. *Id.*

■ In his first point, husband challenges the division of marital property on the basis that the division was based on stale evidence. Here, the evidence was adduced in October 2001. The parties submitted their proposed findings of fact and conclusions of law in December 2001. Yet, the trial court did not enter the dissolution decree until July 2002. It then amended the decree in November 2002 at which time the property division became effective.

Initially, we address wife's contention that husband failed to preserve this issue because he did not file a motion for new trial in which he requested the court to hear evidence as to current values. But, "[i]n cases tried without a jury . . ., neither a motion for a new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review." Rule 78.07(b). Wife's argument is without merit.

■ Section 452.330.1(1) RSMo 2000 requires the court to consider the economic circumstances of each spouse at the time the division of property is to become effective. In *Taylor v. Taylor,* 736 S.W.2d 388, 391 (Mo. banc 1987), the Supreme Court of Missouri held that the proper date for valuation of marital property was at the time of trial. These two directives, however, are not incompatible:

> These two concepts are not inconsistent. Valuation of property should be reasonably proximate to the date the division is to be effective. If the effective date of the distribution is not reasonably proximate to the date of valuation, the court should hold another hearing to establish a valuation as close to the effective date of the division as possible.

*In re Marriage of Gustin,* 861 S.W.2d 639, 644 (Mo.App.1993). The rationale behind this requirement is that distributions based on stale valuations are not based on true value, because value is not a constant. *Id.* at 643. Market conditions and changing economic circumstances can change the value of assets that were valued months earlier. *Morgan v. Ackerman,* 964 S.W.2d 865, 869 (Mo.App. E.D.1998). To distribute property without regard to market fluctuations would be illogical. *Id.*

■ Although the lack of proximity between the evidence regarding value and the date of distribution may constitute trial court error, the delay, standing alone, does not mandate reversal. "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant *materially affecting the merits of the action.*" Rule 84.13(b) (emphasis added). To be "material," the error must have at least a reasonable possibility of being prejudicial to the complaining party. Even if the term "prejudice" is not expressly used, the application of Rule 84.13(b) is implied. Thus, there must be facts in the record from which potential prejudice reasonably could be inferred and each case is therefore fact specific.

■ Factors to consider in determining the materiality of the error are the lapse in time between the evidence regarding valuation and the property distribution as well as the type of property involved. The longer the time lapse and the greater the potential for fluctuation in the value of the property, the greater the chance for prejudicial error. For example, a nine-month gap between evidence and judgment as to the value of the marital home may have a negligible effect on the property division, whereas a nine-month gap in valuing stocks traded on the open market

could be extremely unreliable. Further, where the nature of the property indicates that its value may be volatile, there is no need to allege prejudice. *See, e.g., Morse v. Morse,* 80 S.W.3d 898 (Mo.App. W.D.2002) (where property included 401k and pension plans, six months too long); *Price v. Price,* 921 S.W.2d 668 (Mo.App. W.D.1996) (where property included husband's personal savings plan funded by General Motors stock, five months too long); *Gustin,* 861 S.W.2d 639 (where property included over 800,000 shares of Applebee's stock, eight months too long). Yet, where the evidence does not indicate clearly that the value of the property is volatile, the party challenging the valuation must allege prejudice. *See, e.g., Poole v. Poole,* 977 S.W.2d 940, 944 (Mo.App. S.D.1998) (a nine-month delay not too long where the appellant did not even suggest that the value of the stocks and bonds had substantially changed during that time period); *L.J.B. v. L.W.B.,* 921 S.W.2d 23, 27 (Mo.App. E.D.1996) (a delay of about 15 months not too long where the appellant did not specify that any of the marital property, consisting of a marital residence, furniture, bank accounts, pension plans, and five shares of common stock, had changed drastically in value). Thus, in *Poole* and *L.J.B.,* there was neither any evidence that the value of the marital property was volatile nor any allegation of prejudice.

In the instant action, not only did the record indicate that the value of certain of the marital property was volatile in nature, but husband also alleged prejudice arising from the lapse in time between the valuation evidence and the distribution of the property. The court heard evidence as to the value of the marital property in October 2001, valued the marital property in the July 2002 judgment, and distributed the property in the November 2002 amended judgment, when it denied husband's request to change the value of a brokerage account. In his motion to amend the judgment, husband alleged that there had been a change in the value of a Bank of America brokerage account, which was valued at $250,000.00 at the time of trial, during the nine months between the taking of evidence and valuation in the July judgment. He requested that the court award wife a percentage of the current value of the brokerage account, rather than a specific dollar amount based on the value at the time of trial. Because neither the date of valuation in July 2002 nor the date of distribution in November 2002 was reasonably proximate to the date of trial in October 2001, the court failed to consider the economic circumstances of the parties at the time the property division became effective in accordance with section 452.330.1.

The trial court erred in entering a final judgment dividing the marital assets, because the valuation of the marital assets was not reasonably proximate to the date of distribution. Husband's first point is granted.

Husband also appeals from the decree of dissolution on other grounds, challenging the trial court's award to wife of $5,500.00 in maintenance (part of Point III) and of $10,000.00 of her attorney's fees (Point VI). These awards were entered based on evidence taken more than one year before the date the property was distributed. Awards of maintenance and attorney's fees require consideration of the current "financial resources" of the parties. Sections 452.335 and 452.355 RSMo 2000. In addition, the division of marital property influences in part the amount of maintenance and attorney's fees awarded. We therefore find that these awards should be reversed in order to allow the court on remand a full range of options. *See, e.g., Morgan,* 964 S.W.2d at 869.

On remand, the court must recalculate the awards of maintenance and attorney's fees when it divides the marital property.

The court, however, is ordered to continue the maintenance award in effect until a final judgment is entered. *See id.* In establishing a final award, the court may consider the time during which the present award was in effect and make appropriate adjustments. *See id.*

We discuss others of husband's claims of error because they address issues which may arise on remand.

In his second point, husband charges error in the trial court's determining that he squandered $605,000.00 of marital assets, with the result that the court awarded wife one-half of that amount.

In the instant action, the evidence was that after wife took $700,000.00 out of an account, there was $2.2 million remaining. Husband testified that he spent some of that money for taxes, for paying off vehicle loans, for his new house, for child support, for wife's moving expenses, for a one-sixth interest in Florida property, for a loan to a friend, for a motorcycle, for furniture for his new house, for son's private school tuition, for his attorney's fees, for a stock purchase, for two IRA's, for an umbrella insurance policy, and for buying out an apartment lease. Yet, he could not account for approximately $605,000.00 remaining after these expenditures, except for the explanation that he spent that amount for his and his family's support since December 2000.

The trial court enjoys broad discretion in making determinations on issues relating to the squandering of assets, because it is in the better position to judge credibility. *Heslop v. Heslop*, 967 S.W.2d 249, 254 (Mo.App. W.D.1998). Therefore, where a court hears evidence showing that a spouse has squandered a marital asset in anticipation of a dissolution action, it may order reimbursement. *Judy v. Judy*, 998 S.W.2d 45, 52 (Mo.App. W.D.1999). Here, although husband said that he used the money for marital expenses, the court was free to disbelieve husband's testimony. *See id.* The court also noted that husband spent this money while he was earning a substantial income. There was evidence to support the trial court's determination that husband squandered $605,000.00 of the marital estate.

In part of his third point, husband asserts that the trial court erred in awarding maintenance to wife because he did not have the ability to pay it and wife was capable of earning more than the amount of income imputed to her. The court found that husband had the ability to earn $280,000.00 per year and imputed an annual income of $24,000.00 to wife.

Here, the evidence was that at the time of trial, husband's earnings were $150,000.00 per year, plus a potential bonus of $130,000.00. Husband was a high level corporate executive, who in the past had earned considerably more than he was earning at the time of trial. Wife's expert testified that husband's salary, including bonus, was at the low end of the range for persons in his field and position.

Regarding wife's income, wife had stayed at home to care for the children with the consent of husband. Although her education and training were as an elementary school teacher, she had not worked since 1989 and she was not certified to teach in Missouri. Her expert witness testified that as a full-time elementary school teacher, wife could earn an average income of about $24,000.00. Husband's expert testified that wife could earn $35,000.00 per year. The trial court's findings regarding husband's and wife's incomes were supported by substantial evidence.

In his fourth point, husband contends that the trial court erred in including $1,010.00 per month in its Form 14 calculation for extraordinary child rearing expenses. DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COM-

PLETION OF FORM NO. 14, Line 6e, Comment A provides that other extraordinary child-rearing costs "may include ... lessons ... and other activities intended to enhance the athletic, social or cultural development of a child."

Here, wife testified that daughter took dance lessons from August through June and performed on the dance team from September through June and that she incurred expenses for costumes and shoes. She stated that she bought both children athletic equipment, including shoes and protective equipment for a variety of sports. She also incurred travel expenses for their activities. The court found that the children traditionally had been involved in their various activities with the approval of both parents. There was sufficient evidence for the court to find that wife expended $1,010.00 per month for extracurricular and enrichment activities.

In his fifth point, husband asserts that the trial court erred in ordering the parties to pay for college expenses for the children.

College or other post-secondary educational costs are items of child support. *Burton v. Donahue,* 959 S.W.2d 946, 949 (Mo.App. E.D.1998). The court may order the parental support obligation to continue until the child "completes his or her [higher] education, or until the child reaches the age of twenty-two, whichever first occurs...." Section 452.340.4 RSMo 2000. In determining the proper amount of child support, the trial court balances the needs of the child against the ability of the non-custodial parent to pay. *L.A.L. v. L.L.,* 904 S.W.2d 50, 55 (Mo.App. E.D. 1995). The trial court is in the best position to determine whether the non-custodial parent is financially capable to help support the child's college expenses. *Id.*

Here, the court determined that it was in the best interests of the children to provide for the payment of college costs "in the event that the parents agree to send the children to college as part of the exercise of their joint legal custody." The court also ordered that the parties share the costs "proportional to their respective income reported to the IRS in the year prior to the cost being incurred." In addition, in light of the family's standard of living during the marriage and father's substantial income at the time of dissolution, the trial court did not err in its allocation of the children's college expenses.

The judgment is affirmed in part and reversed in part as to the property division, the award of maintenance, and the award of attorney's fees. The cause is remanded for reconsideration of these awards.

CLIFFORD H. AHRENS, P.J., and LAWRENCE E. MOONEY, J.: Concur.