Teri McCALLUM, Respondent.

v.

Craig D. McCALLUM, Appellant.

No. ED 85653.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 21, 2006.

Michael A. Gross, Clayton, MO, for Appellant.

Charles P. Todt, Tonya D. Fifer, Lisa M. Fuller, The Todt Law Firm, P.C., Clayton, MO, for Respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Craig D. McCallum ("Husband"), appeals the second amended dissolution judgment ("the second amended judgment") of the Circuit Court of St. Louis County. On November 12, 2002, after a bench trial, the trial court entered an amended judgment ("the first amended judgment") dissolving the marriage of Husband and Respondent, Teri McCallum ("Wife"). Subsequently, we reversed in part and affirmed in part the first amended judgment and remanded the case for further proceedings. Upon remand, the trial court ordered Husband to pay Wife $195,407 as reimbursement for money due under the first amended judgment, found that the original maintenance award did not need to be modified, and increased Husband's child support obligation. We affirm.

Husband and Wife were married in 1985. Two children were born of the marriage: a son born in 1987 and a daughter born in 1990 (collectively "the two minor children"). In November of 2000, Wife filed a petition for dissolution of marriage.

A bench trial was held in October of 2001. On November 12, 2002, the trial court entered the first amended judgment dividing the marital property of Husband and Wife. The trial court awarded Husband $769,689 or 50.3% of the marital property and $760,378 or 49.7% of the marital property to Wife. The trial court specified that Wife was to receive $142,377 from the parties' Bank of America brokerage and money manager accounts (collectively "the Bank of America accounts"), and $53,030 from the parties' American Express financial services account ("the American Express account").

The trial court awarded joint legal custody of the two minor children to both parents and primary physical custody to Wife. Husband was imputed income of $280,000 per year, and Wife was imputed income of $24,000 per year. Wife was awarded maintenance in the amount of $5,500 per month. Husband was also ordered to pay child support to Wife for the

two minor children in the amount of $1,673 per month.

On January 8, 2003, Wife filed a motion to modify the first amended judgment praying, *inter alia*, that the trial court recalculate Husband's child support obligation as the result of purported substantial and continuing changes. On September 15, 2003, Husband filed an amended motion to modify the first amended judgment praying, *inter alia*, that the trial court substantially decrease his maintenance obligation to Wife and reduce or abate his child support obligation.

In an opinion dated November 25, 2003 ("*McCallum I*"), we reversed in part the first amended judgment of the trial court because the date of valuation of the marital assets divided was not reasonably proximate to the date of distribution of the assets. *See McCallum v. McCallum*, 128 S.W.3d 62, 67 (Mo.App. E.D.2003). In *McCallum I*, we indicated that the trial court heard evidence concerning valuation of marital property during the October 2001 bench trial and then valued the marital property in July of 2002, but the property division did not become effective until the November 12, 2002 first amended judgment was entered. *Id.* We also reversed the trial court's award to Wife of $5,550 per month in maintenance so that the trial court, upon remand, had a full range of options. *Id.*

In July of 2004, pursuant to our remand of the case, the trial court held a hearing. At the same time, evidence was received on Husband and Wife's motions to modify. In the second amended judgment, entered on November 23, 2004, the trial court ordered Husband to pay Wife $195,407 as reimbursement for money due under the first amended judgment. The trial court denied both Husband and Wife's motions to modify maintenance by finding that the award to Wife of $5,550 per month in maintenance was still appropriate. However, the trial court granted Wife's motion to modify child support by increasing Husband's child support obligation to $2,435 per month for the two minor children. This appeal by Husband followed.

In reviewing this bench-tried case, we must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *McCallum*, 128 S.W.3d at 65. We view the evidence and the reasonable inferences therefrom in the light most favorable to the prevailing party. *Id.* We recognize the superior position of the trial court to judge the credibility and sincerity of witnesses. *Krost v. Krost*, 133 S.W.3d 117, 119 (Mo. App. E.D.2004). The trial court may accept all, part, or none of the testimony of a witness. *Id.*

In his first point on appeal, Husband claims the trial court erred in ordering him to pay Wife $195,407 as part of its distribution of marital assets.

■ If a spouse secretes or squanders marital property in anticipation of a divorce, the court has the authority to order reimbursement. *Loomis v. Loomis*, 158 S.W.3d 787, 791 (Mo.App. E.D.2005).

■ In the second amended judgment, Husband was ordered to pay Wife $142,377 to reimburse her for her interest in the Bank of America accounts and $53,030 for her interest in the American Express account for a total of $195,407. This was the same amount Wife was awarded, but never received, under the two accounts in the first amended judgment. The trial court found that Husband transferred or squandered the funds from the accounts "in anticipation of a final judgment awarding these funds to Wife."

As indicated in the facts section above, in *McCallum I* we remanded this case to the trial court because the date of valuation of the marital assets divided was not reasonably proximate to the date of distribution of the assets. *McCallum*, 128 S.W.3d at 67. We stated that to distribute property without regard to market fluctuations would be illogical. *Id.* at 66.

At the hearing on remand, it was established that the values of the Bank of America accounts and the American Express account were substantially lower in November of 2002 than they were at the time of the October 2001 bench trial when evidence as to the valuation of marital assets was received by the trial court. Thus, Husband claims that the award of $195,407 was not properly premised on the value of the marital property at the time of distribution of the property in November of 2002. However, Husband provided no evidence during the hearing on remand that the substantial reduction of the account balances was due to market forces.

Recent evidence indicates that, subsequent to the October 2001 hearing, Husband withdrew large sums of money from the Bank of America accounts and the American Express account in order to make business investments. For example, in November and December of 2001, Husband transferred $64,000 from the Bank of America money manager account for investment in Ocean Walk Properties. In March of 2002, Husband transferred $150,000 from the same account to Penny Lefcowitz (an investor in Ocean Walk Properties). In May of 2002; Husband transferred $39,250 from the same account for investments in Flush Entertainment, World Entertainment, and Twilight Entertainment. Husband also admitted at the July 2004 hearing that he closed out the American Express account and transferred the money to another account.

The trial court did not find credible Husband's testimony that he received no return on some of the business investments he made with the money withdrawn from the accounts. There is substantial evidence indicating that the depletion of the Bank of America accounts and American Express account was the result, not of market fluctuation, but of Husband's secreting or squandering of the assets in anticipation of dissolution. Therefore, the trial court did not err in ordering Husband to pay Wife $195,407 as part of its distribution of marital assets. Point denied.

■ In his second point on appeal, Husband asserts the trial court erred in re-entering its original maintenance award of $5,500 per month in favor of Wife.

■ We review maintenance awards for an abuse of discretion. *Bonenberger v. Bonenberger*, 108 S.W.3d 729, 733 (Mo. App. E.D.2003). We will uphold the trial court's maintenance award unless the amount of maintenance awarded is patently unwarranted or is wholly beyond the means of the spouse ordered to pay. *Id.* For purposes of making a maintenance determination, the trial court may consider both the past and present earnings of a spouse. *Schroeder v. Schroeder*, 924 S.W.2d 22, 27 (Mo.App. E.D.1996). In certain situations, the court may impute income to a spouse according to what he could earn by use of his best efforts to gain employment suitable to his capabilities. *Id.*

Husband argues that, to the extent the maintenance award of $5,500 per month is premised on the finding that Husband should still be imputed annual income of $280,000, the maintenance award was not supported by substantial evidence. Wife agrees that it is still appropriate to impute income of $24,000 a year to her despite the

fact that she was unemployed at the time of the July 2004 hearing.

In the five year span from 1996 through 2000, the average annual income for Husband was in excess of $300,000. In 1998, Husband earned $213,020 even though he was not employed for part of that year. At the time of the October 2001 bench trial, Husband was employed as a Senior Vice President for Business Development at Protégé Group, earning an annual salary of $150,000, with the expectation of a bonus of $130,000 or more. At the time of the hearing upon remand in July of 2004, he was working for VistaWiz for a salary of $80,000 per year.

However, the trial court noted that throughout his career Husband has always earned income from business ventures and that salary has not always been his primary source of income. Husband admits that he has made investments throughout his career and it has worked out well, so that is what he continues to do. In addition to his current employment, Husband has invested substantial sums of money into certain companies, including Ocean Walk Properties. Furthermore, the trial court found that Husband failed to establish that he used "all reasonable efforts to generate the income imputed to him at the time of the 2002 dissolution judgment." Thus, the trial court did not err in finding that Husband failed to establish substantial and continuing changes such that the continuation of the original maintenance order is unreasonable. Point denied.

In his third point on appeal, Husband contends the trial court abused its discretion in granting Wife's motion to modify his child support obligation.

We will affirm the trial court's judgment on a motion to modify child support absent a manifest abuse of discretion. *Spencer v. Spencer*, 126 S.W.3d 770, 772

(Mo.App. E.D.2004). A trial court may consider both past and present earnings in determining the ability of a non-custodial parent to pay child support. *Hogrebe v. Hogrebe*, 727 S.W.2d 193, 195 (Mo.App. E.D.1987).

In the first amended judgment, the trial court awarded Wife child support for the two minor children in the amount of $1,673 per month. In the second amended judgment, the trial court increased Husband's child support obligation to $2,435 per month for the two minor children.

As indicated in the analysis of the previous point on appeal, the decision to continue to impute income of $280,000 per year to Husband is supported by evidence in the record. Additionally, before the second amended judgment was entered, Husband and Wife stipulated that Husband would no longer receive visitation credit for purposes of calculating child support. This stipulation caused a substantial change in the amount of monthly child support Husband has to pay Wife. Therefore, the trial court did not abuse its discretion in granting Wife's motion to modify Husband's child support obligation. Point denied.

Based upon the foregoing, we affirm the judgment of the trial court.

GEORGE W. DRAPER III, J. and KENNETH M. ROMINES, J., concur.