Gavin T. **MEIER,** Appellant,

v.

Christine D. **MEIER,**
**Respondent/Cross–**
**Appellant.**

No. **ED 92400.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 23, 2010.

James C. Ochs, Clayton, MO, for appellant.

Mark W. Kiesewetter, St. Louis, for Guardian Ad Litem.

Joseph J. Kodner, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Gavin Meier (Husband) appeals and Christine Meier (Wife) cross-appeals from the judgment of the Circuit Court of St. Louis County dissolving their marriage. Husband claims that the trial court erred by: (1) using property values and income and expense statements that were "over a year old" when dividing the parties' marital property and awarding Wife maintenance and attorney's fees; (2) including as Husband's gross income the depreciation deduction reported for Husband's S corporation, Meier Environmental Services & Associates, Inc. (MESA); (3) awarding Wife a disproportionate share of the marital property; (4) valuing Husband's corporation at $0 instead of negative $139,902.00; and (5) awarding Wife $130,858 in dividends and interest from Husband's Charles Schwab brokerage account (Schwab account) instead of a percentage of the account as required by the parties' stipulation. In her cross-appeal, Wife asserts that the trial court erred in finding that only the interest and dividends generated by the Schwab account, rather than the Schwab account itself, constituted marital property. We affirm in part, and reverse and remand in part.

### Background

Husband and Wife married in 1992. They had four children together. On February 24, 2005, Husband filed a petition for legal separation. On October, 11, 2005, Wife filed a cross-petition for dissolution of marriage, in which she sought, *inter alia,* equitable distribution of the marital property and debts, maintenance, child support, and attorney's fees.

The parties tried the matter on April 12–13, 2007 and September 13–14, 2007. On March 3, 2008, the trial court entered its judgment dissolving the marriage. In the judgment, the trial court divided the parties' marital property 60/40 in favor of Wife. The trial court found that Husband's S corporation, MESA, formed in 1995, was

marital property. Due to MESA's significant debts, the trial court valued the business at $0 and awarded it to Husband. Additionally, the trial court found that Husband's Schwab account was his separate property, which, based on a March 31, 2007 statement, had a net value of $896,283. The trial court determined that the $130,858 in interest and dividends earned on the account during the marriage, however, was marital property. The trial court acknowledged that the parties had stipulated that in the event a portion of the Schwab account was marital property, the trial court would award each party a percentage of the total account so that each party equally shared the respective tax liabilities. The trial court awarded each party 50% of the account's interest and dividends.

Second, the trial court found that Wife lacked the means to meet her reasonable needs and, consequently, ordered Husband to initially pay maintenance of $1,500 per month and, after the parties sold the marital house sold, thereby extinguishing Husband's mortgage obligation, $3,000 per month. The trial court based this figure on its finding that Wife had no significant income-producing assets and earned employment income of only $20,000 per year ($1,666 per month), while her reasonable needs were $4,900 per month. Furthermore, the trial court found that Husband possessed the means to pay Wife maintenance. Specifically, the trial court found that Husband received $5,000 per month from both the interest paid to him from his personal loan to MESA and the dividends generated by his Schwab account. The trial court also included in Husband's income the $420–per–month salary he received from MESA and the $259 per month MESA paid for his personal entertainment expenses. Finally, the trial court added to Husband's income MESA's $3,545–per–month depreciation deduction

as reflected in its financial statements between 2002 and 2006. In all, the trial court totaled Husband's gross income at $9,224 per month, while Husband's monthly expenses were only $4,980 per month.

Third, the trial court granted the parties joint legal and physical custody of the parties' four children. The trial court also ordered Husband to pay Wife child support. In determining the amount of child support, the trial court used the same gross income figures derived during its consideration of maintenance: $1,666 per month for Wife and $9,224 per month for Husband.

Last, the trial court reviewed the parties' requests for attorney's fees. After considering the economic circumstances of the parties and the financial arrangements in the dissolution judgment, the trial court ordered Husband to pay Wife's attorney's fees in the amount of $25,000.

Following the trial court's judgment, both parties moved the trial court to amend the judgment or, in the alternative, grant a new trial. On June 2, 2008, the trial court denied the motions for a new trial, but entered an amended judgment. In the amended judgment, the trial court determined that MESA was worth negative $139,902.00 instead of $0, and altered the division of property accordingly. The trial court also amended MESA's depreciation deduction included as Husband's income from $3,545 to $3,250, thereby decreasing Husband's gross income from $9,224 to $8,928 per month. Finally, the trial court increased the amount of attorney's fees Husband owed to Wife to $30,000.

Following entry of the amended judgment, Husband and Wife again moved to amend the judgment or for a new trial. On September 9, 2008, the trial court entered a second amended judgment. In

this judgment, the trial court found that because the bulk of MESA's debt was from loans to Husband, it was inappropriate to value MESA at a negative number and re-valued MESA at $0. In light of the increase in valuation of MESA, the trial court awarded 100% of the marital portion of the Schwab account, the $130,858 in interest and dividends, to Wife in order to maintain the 60/40 division of marital property. Finally, the trial court added a provision requiring Husband to pay 60% of any of the children's college costs.

On October 8, 2008, Husband moved for a second amended judgment or a new trial claiming, *inter alia,* that the trial court erred in including a provision for college costs and by utilizing inaccurate values of properties and debts that were over one year old. The next day, Wife filed a motion for additional attorney's fees. In connection with Wife's motion for attorney's fees, both parties filed updated income and expense statements on November 21, 2008. Wife's amended income and expense statement indicated that her employment income included $480 weekly and a one-time $1,500 bonus ($2,205 per month). Husband reported in his income and expense statement that his yearly income had significantly decreased to $39,548 ($3,295.67 per month) and that his Schwab account was worth only $313,124. Husband also included a financing statement dated October 31, 2008 valuing the Schwab account at $367,673.72. On December 23, 2008, the trial court entered its final judgment granting Husband's motion to amend in part by striking the provision for college expenses, but declined to re-value the property and debt. The trial court also denied Wife's motion for additional attorney's fees. Husband appeals.

### Standard of Review

We affirm a trial court's judgment of dissolution unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies the law. *Manning v. Manning,* 292 S.W.3d 459, 462 (Mo.App. E.D.2009). "We view the evidence and permissible inferences therefrom in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences." *Id.* "We defer to the trial court's determinations of witness credibility." *Id.*

The trial court has broad discretion in dividing marital property and awarding child support, maintenance, and attorney's fees. *Hatchette v. Hatchette,* 57 S.W.3d 884, 888, 890–91, 893 (Mo.App. W.D.1994). Likewise, the trial court has broad discretion in identifying property as marital or separate. *In re Marriage of Looney,* 286 S.W.3d 832, 837 (Mo.App. S.D.2009). "The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Manning,* 292 S.W.3d at 462 (quotation omitted).

### Discussion

#### A. Stale Property Values and Income and Expense Statements

■ In his first point, Husband contends that the trial court erred in its property division and awards of maintenance and attorney's fees because it utilized property values and income and expense statements that were "over a year old." Specifically, Husband asserts that "[t]he trial court's March 3, 2008 Judgment and the subsequent judgments of the trial court are flawed because they rely on a March 31, 2007 determination of the value of the Schwab account, and testimony about the income and expenses of the parties, and their relative economic circumstances from trial occurring on April 12

and 13, 2007 . . . and September 13 and 14, 2007. . . ." We agree.

As an initial matter, we note that the cases Husband relies on for his point are factually distinguishable from the instant facts. Husband cites *In re Marriage of Gustin,* 861 S.W.2d 639 (Mo.App. W.D. 1993) and *McCallum v. McCallum,* 128 S.W.3d 62 (Mo.App. E.D.2003), where the courts reversed a trial court's division of property because the trial court's valuation of *marital* property was not reasonably proximate to the effective date of distribution. *McCallum,* 128 S.W.3d at 67; *Gustin,* 861 S.W.2d at 644. Here, Husband does not challenge the trial court's valuation of the parties' marital property. Rather, he challenges the trial court's valuation of his separate property and the parties' income and expenses because of the influence those valuations had on the trial court's distribution of the parties' marital property.

■ Nevertheless, although *Gustin* and *McCallum* are distinguishable, the legal principles discussed in those cases are instructive. In *Gustin,* the court began its analysis with Section 452.330.1(1), which requires the trial court to divide marital property and marital debts in such proportions as the court deems just after considering all statutory factors, including the economic circumstances of the parties at the time the division of property is to become effective. *Gustin,* 861 S.W.2d at 643 (citing Mo.Rev.Stat. § 452.330.1(1) (Supp.1988)).[1] Expounding on the necessity of considering the economic circumstances of the parties near the time the distribution of property becomes effective, the *Gustin* court adopted the holding from the Pennsylvania Supreme Court in *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988):

[O]ne can readily imagine the economic injustices that would be inflicted by distributing property without regard to its value. It cannot be said that distributions based upon stale valuations are based on value, for value is by no means a constant.

\* \* \*

Volatile market conditions and changing economic circumstances can render assets that had been valuable months or years earlier virtually worthless in the present, and vice versa. Publicly traded securities may be worth a fortune one day, and a pittance the next.

\* \* \*

In view of these commonly recognized aspects of valuation, it is difficult to conceive justification for the view that stale valuation data, i.e., data that does not reflect values reasonably proximate to the date of distribution, should be used by the court in setting a distribution scheme.

\* \* \*

To distribute property without regard to those fluctuations would be illogical, and would undermine the legislative intent of making the equitable distribution process responsive to the contemporaneous needs and financial situations of the parties.

*Gustin,* 861 S.W.2d at 643–44 (quoting *Sutliff,* 543 A.2d at 537). Drawing from *Sutliff* the *Gustin* court held:

Valuation of property should be reasonably proximate to the date the division is to be effective. If the effective date of the distribution is not reasonably proximate to the date of valuation, the court

---

1. The division of property becomes effective when the trial court enters its judgment dissolving the marriage. *In re Marriage of*

*Burns,* 903 S.W.2d 648, 652 (Mo.App. E.D. 1995).

should hold another hearing to establish a valuation as close to the effective date of the division as possible. This is especially important in a case such as this in which assets are subject to ever changing value.

*Id.*, at 644.

When dividing marital property and marital debts, a trial court is required under Section 452.330.1(1) and (3) to consider the economic circumstances of the parties at the time the division is to become effective as well as the value of non-marital property set apart to each spouse. Mo.Rev.Stat. § 452.330.1(1), (3) (2000). In accordance with its statutory mandate, the trial court considered the above factors and divided the marital property 60/40 in favor of Wife finding "that it is appropriate to award a disproportionate share of the marital property in light of the relevant economic circumstances of the parties at the time of the dissolution and the amount of separate property possessed by Husband." Despite the trial court's reliance on these factors to award Wife a disproportionately larger share of the marital estate, the trial court utilized valuations of the parties' incomes and expenses and Husband's Schwab account calculated fifteen to twenty-one months before the trial court's final December 23, 2008 judgment distributing the marital property. *See e.g.,* *McCallum,* 128 S.W.3d at 67 (thirteen months was not a reasonably proximate amount of time between the date of valuation and the date of distribution); *Morse v. Morse,* 80 S.W.3d 898, 905–06 (Mo.App. W.D.2002) (six months); *Price v. Price,* 921 S.W.2d 668 (Mo.App. W.D.1996) (five months); *Gustin,* 861 S.W.2d 639 (eight months). The trial court's reliance on stale valuation data when determining the parties' proportionate share of marital property was in error.

■ Although a lack of reasonable proximity between the date of valuation and the date of distribution, such as here, may constitute error, the error does not mandate reversal. *McCallum,* 128 S.W.3d at 66. Reversal is necessary only when the error is material—i.e., "there must be facts in the record from which potential prejudice reasonably could be inferred and each case is therefore fact specific." *Id.*

Here, the trial court's error was material. First, evidence showed that the trial court not only used fifteen to twenty-one month old valuations of the Schwab account and the parties' incomes and expenses, but also that by the time the trial court entered its final judgment, those valuations had significantly changed. Specifically, the value of Husband's Schwab account decreased from $896,283 on March 31, 2007 to $367,673 by October 31, 2008. From the date of trial to the date the parties submitted their updated income statements on November 21, 2008, Wife's income increased from $1,666 to $2,205 per month while Husband's income decreased from $8,928 to $3,295 per month. Reversal is required in order for the trial court to hold a hearing and receive valuation evidence of Husband's separate property and the economic circumstances of the parties that is reasonably proximate to the date of distribution.

■ In addition to challenging the trial court's division of marital property, Husband contends that reversal is also required with respect to the maintenance and attorney's fees awards. Similar to the task of dividing marital property, a trial court awarding maintenance and attorney's fees must consider the current "financial resources" of the parties. *Id.* at 67. (citing Mo.Rev.Stat. §§ 452.335, 452.355). "In addition, the division of marital property influences in part the amount of maintenance and attorney's fees award-

ed." *Id.* Therefore, we find that reversal of the trial court's maintenance and attorney's fees awards is also necessary to allow the trial court a full range of options on remand. *See, e.g., id.; Gustin,* 861 S.W.2d at 645.

In response, Wife posits several arguments against reversal of the trial court's judgment. First, Wife contends that Husband is estopped from appealing the maintenance award because, subsequent to submitting his notice of appeal, Husband filed a motion to modify the maintenance award in which he expressly recognized the existence and validity of the trial court's underlying judgment. For her argument, Wife cites the general rule that a party's voluntary act which expressly or impliedly recognizes the validity of a judgment may estop that party from pursuing an appeal of the judgment. *Steen v. Colombo,* 799 S.W.2d 169, 174 (Mo.App. S.D.1990). Wife, however, cites no authority, nor do we find any, where a party's filing of a motion to modify a judgment, in itself, estopped the party from pursuing an appeal. Instead, Wife cites *State ex rel. State of Kansas Social & Rehabilitation Services v. R.L.P.,* 157 S.W.3d 268 (Mo. App. S.D.2005), which is of no assistance to Wife because, there, the court found no estoppel. *Id.* at 273–74. Indeed, the *R.L.P.* court observed that "the general rule pertaining to acquiescence in judgments should not be strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved." *Id.* at 272. Thus, even if we accepted Wife's argument regarding the applicability of estoppel here, given the equitable considerations present, we decline to reject Husband's appeal on the grounds of estoppel.

Second, Wife asserts that Husband has failed to demonstrate the type of prejudice necessary for reversal because one spouse's separate property does not have a "material impact" on the trial court's overall division of marital property. For her argument, Wife relies on *Thomas v. Thomas,* 196 S.W.3d 57, 64 (Mo.App. W.D.2005). However, *Thomas* does not suggest that where, as here, a trial court uses stale separate property values to determine the proper division of marital property, the judgment cannot be reversed on appeal. Moreover, Wife neglects to address Husband's allegation that the marital division is erroneous not only due to stale separate property figures, but also due to stale income and expense figures.

Third, Wife argues that Husband did not prove that the trial court failed to consider the current valuation evidence prior to entering its final amended judgment. Specifically, Wife claims that because the October 31, 2008 Schwab account financial statement and the November 21, 2008 updated income and expense reports were before the trial court in connection with Wife's motion for additional attorney's fees, the trial court necessarily considered this valuation evidence prior to entering its final judgment distributing the parties' martial property. Wife's contention is not supported by the record. In entering its March and June 2008 judgments, the trial court rendered specific findings of fact regarding the parties' separate property and economic circumstances. In its final amended December 23, 2008 judgment, the trial court denied Husband's request to revalue the parties' property and economic circumstances and entered no new findings evidencing consideration of the updated valuation evidence. We decline to assume that the trial court considered the updated valuation evidence under these circumstances.

Finally, Wife claims that Husband's point fails because he did not file a motion to reopen the evidence. Wife fails to offer

any legal authority in support of her argument or explain why such authority is not available. Accordingly, Wife's argument is without merit. *See Francis v. Richardson,* 978 S.W.2d 70, 72 (Mo.App. S.D.1998).

### B. Including MESA's Depreciation Deductions in Husband's Income

■ In his second point, Husband contends that the trial court erred by including MESA's depreciation deductions in his gross income. Husband claims that MESA's depreciation deductions did not constitute gross income available to him because "MESA, [Husband's] business, has not turned a profit in many years and is subsidized by loans from [Husband's] separate property, in which [Husband] receives interest payments back from MESA."

■ Form 14 sets forth specific guidance for calculating a spouse's gross income for child support purposes.[2] Under Form 14, if a spouse is self-employed in an S corporation, "gross income" is the corporation's "gross receipts minus the ordinary and necessary expenses incurred to produce such receipts." *Thill v. Thill,* 26 S.W.3d 199, 207 (Mo.App. W.D.2000) (quoting Mo. Sup.Ct. R. Form 14 *Directions and Comments* ). Depreciation, however, may be excluded from such ordinary and necessary expenses because depreciation is a non-cash deduction, and therefore, may artificially reduce a spouse's reported gross income. *See Blevins v. Blevins,* 249 S.W.3d 871, 874 (Mo.App. W.D.2008). Whether a trial court adds a claimed depreciation deduction to a spouse's gross

income is within the court's discretion. *Thill,* 26 S.W.3d at 207.

Here, the trial court acted within its discretion by adding MESA's depreciation deduction to Husband's income. For his argument that MESA's depreciation deduction did not represent cash available to him, Husband relies on his testimony that MESA had not earned a profit for the past seven years and his accountant's testimony that MESA's depreciation deduction for 2006 was not "cash money available to [Husband]." However, evidence of MESA's financial statements for the time period between 2002 and 2006 showed that MESA had earned a net profit of $31,495.99 even after deducting $195,042.00 in "depreciation expenses." In finding that Husband's gross income included MESA's depreciation deduction, the trial court relied on the 2002–2006 financial statements instead of Husband's and Husband's attorney's testimony. We defer to the trial court's credibility determinations. *Manning,* 292 S.W.3d at 462. Point denied.

### C. Wife's Share of the Marital Property

In his third point, Husband contends that the trial court erred in awarding Wife 60% of the marital property. Because our resolution of Husband's first point requires reversal of the trial court's division of property, we decline to review this point.

### D. Valuing MESA at $0

■ In his fourth point, Husband contends that the trial court erred in valuing MESA at $0 instead of negative $139,902.00. Husband claims that clear

---

**2.** Husband does not specify whether he is contesting the trial court's property division or its child support or maintenance awards. While Form 14 is primarily used to calculate a spouse's gross income for child support purposes, we find its application relevant here to assess whether the trial court abused its discretion in calculating Husband's gross income for child support purposes as well as maintenance and division of property purposes.

and convincing evidence showed that MESA had assets totaling $676,058.00 and liabilities totaling $815,960.00, thus resulting in a net value of negative $139,902.00.

 A trial court enjoys broad discretion in valuing marital property. *Farley v. Farley*, 51 S.W.3d 159, 164 (Mo.App. S.D.2001). Valuation of a corporation requires a determination of fact by the trial court, which we give great deference. *Thill*, 26 S.W.3d at 203. "No one formula or method of determining value is binding or conclusive." *Id.* A trial court's determination of value must be an informed judgment, but the fair value of a corporation is not susceptible of determination by any precise mathematical computation. *Id.* (quoting *Flarsheim v. Twenty Five Thirty Two Broadway Corp.*, 432 S.W.2d 245, 255 (Mo.1968)).

The trial court did not abuse its discretion in valuing MESA at $0. While the evidence showed and the trial court expressly found that MESA had assets totaling $676,058.00 and liabilities totaling $815,960.00, the trial court further found that $635,960.00 of MESA's liabilities constituted a loan from Husband drawn from Husband's Schwab account. The trial court, therefore, acted within its discretion when it concluded that "MESA should be stated at zero value rather than a negative value because to do otherwise is to allow Husband to reduce the value of a marital asset with relation to the equitable allocation of the entire marital property based on a debt he effectively owes to himself." Point denied.[3]

### E. Trial Court's Disregard of Parties' Stipulation

In his fifth point, Husband contends that the trial court erred in awarding Wife

$130,858.00 of the Schwab account because the award disregarded the parties' stipulation that the trial court distribute any marital portion of the Schwab account in a percentage of shares. In response, Wife argues that Husband failed to raise his argument before the trial court and it is therefore unpreserved, and that, in any event, the trial court was entitled to disregard the stipulation in order to avoid a manifest injustice because enforcement of the stipulation would have disturbed the 60/40 division of property.

We need not resolve this issue in light of our disposition of Husband's first point. On remand, after recalculating Husband's Schwab account using current valuations, the trial court may at that time adjust its judgment to comply with the parties' stipulation.

### F. Determination that Schwab Account, Excluding Interest and Dividends, was Husband's Separate Property

 In her sole point on cross-appeal, Wife contends that the trial court erred in determining that the Schwab account was only marital property to the extent of the interest and dividends earned by the account. Wife asserts that the trial court improperly charged her with the burden of proving that the Schwab account was marital property when, the account was presumptively marital and Husband, in fact, bore the burden of proving that the account was his separate property. Wife further asserts that Husband failed to meet his burden because the Schwab account contained both separate and marital funds and Husband could not identify

---

3. We note that the parties dispute whether as a matter of law a corporation may have a negative value for division of marital property purposes. Because we find that the trial court acted within its discretion in finding that MESA had a value of $0, we decline to resolve that issue.

which portion of the Schwab account was his separate property. We agree.

All property acquired subsequent to a marriage is presumed marital property. Mo.Rev.Stat. § 452.330.3 (2000). The party claiming that presumptively marital property is in fact separate property bears the burden of rebutting the presumption by clear and convincing evidence. *Drikow v. Drikow*, 803 S.W.2d 122, 126 (Mo.App. E.D.1990). A party may meet this burden by showing that the property falls within one of the categories provided in Section 452.330.2, including that the spouse acquired the property by gift, bequest, devise, or descent. *In re Marriage of Maninger*, 106 S.W.3d 4, 9 (Mo.App. E.D.2003) (citing Mo.Rev.Stat. § 452.330.2(1) (2000)). Additionally, separate property does not become marital property solely because it has become commingled with marital property. Mo. Rev.Stat. § 452.330.4 (2000). However, "[o]nce commingling occurs, the party claiming separate property has the burden of establishing that an identifiable portion of the funds can be traced to specific non-marital assets." *In re Marriage of Looney*, 286 S.W.3d at 837.

Here, it is undisputed that, while Husband opened the Schwab account during the marriage in 1993, Husband sufficiently proved that all of the deposits in the account originated from either gifts or inheritances to Husband, thus constituting his separate property. The issue in dispute relates to the dividends and interest earned on the account as well as the appreciation of the value on the account.

Dividends and interest earned on separate property during a marriage are marital property. *Coleberd v. Coleberd*, 933 S.W.2d 863, 869–70 (Mo.App. S.D. 1996). In contrast, an increase in value of separate property due to appreciation remains separate property, except to the

extent marital assets have contributed to the increase. *Welch v. Welch*, 821 S.W.2d 560, 561 (Mo.App. E.D.1991).

The evidence showed that between 1993 and 2007, the Schwab account earned dividends and interest in the amount of $130,858.53. The dividends and interest, upon realization, were added to the value of the account. During that same time period, the total value of the account, which included Husband's deposits and the interest and dividends, increased by a net appreciation of $386,708.38.

In its judgment, the trial court correctly recognized that Husband's deposits were his separate property, but that the interest and dividends earned on the account constituted marital property. With respect to appreciation, the trial court noted that "[w]hile appreciation on a separate asset remains separate property, if the appreciation is on an account having separate and marital components, then a portion of the appreciation might at least logically be marital." The trial court, however, found that the entire Schwab account, excluding interest and dividends, was Husband's separate property because "no evidence was presented to the court by which to determine what portion of the total appreciation would be attributable to the dividends and interest that had accumulated in the account."

The trial court's findings demonstrate a misapplication of the law. The trial court recognized that the Schwab account's total value included both marital and separate funds and, therefore, the total appreciation on the account may include appreciation of marital property. Nonetheless, the trial court failed to designate any of the total appreciation as marital property due to a lack of evidence. This finding reveals that the trial court erroneously relieved Husband of his burden of proving the amount

of the Schwab account's appreciation traceable to his separate property. Moreover, the financial statements Husband introduced as evidence did not identify which amount of appreciation is attributable to Husband's deposits or to the interest and dividends. Husband's accountant, when asked whether he could apportion the $386,000 worth of appreciation between Husband's deposits and the dividends and interest, testified that he could not. Because Husband failed to meet his burden of proving that a portion of the total appreciation was traceable to his specific separate property, the trial court's judgment setting aside the entire Schwab account, excluding interest and dividends, as Husband's separate property is reversed. On remand, the trial court must reevaluate which portion of Schwab account is marital and may accept additional evidence on the issue.

### Conclusion

The trial court's judgment dividing the marital property, awarding Wife maintenance and attorney's fees, and designating the Schwab account, except the interest and dividends, as Husband's separate property is reversed. The judgment is affirmed in all other respects. The cause is remanded for further proceedings consistent with this opinion.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., concur.