

# Missouri Court of Appeals
## Southern District

### In Division

JEANETTE PICKENS, )
)
    Petitioner-Appellant, )
)
v. ) No. SD37791
) Filed: March 27, 2024
JAMES EDWARD PICKENS, )
)
    Respondent-Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF PEMISCOT COUNTY

Honorable William Edward Reeves, Circuit Judge

### AFFIRMED IN PART, VACATED IN PART, AND REMANDED

Jeanette Pickens (Wife) appeals from a judgment dissolving her 20-year marriage to James Pickens (Husband). On appeal, Wife contends the trial court committed reversible error in four respects, by: (1) valuing Husband's 401(k) as of the date of the parties' marital separation, as opposed to the date of trial; (2) denying Wife maintenance; (3) deducting half of the insurance proceeds for roof repairs from Wife's share of marital property; and (4) failing to take into consideration the economic circumstances of each spouse at the time of division of property, and the conduct of the parties during the marriage. Point 1 has merit and is granted. This holding requires us to vacate the separate and marital property divisions because they are based on a stale and inaccurate value for Husband's 401(k) plan. Moreover,

we must vacate the denial of maintenance in Point 2 because one essential component of that analysis is the amount of marital property awarded to the spouse seeking maintenance. Because the marital property division is vacated, Points 3 and 4 are moot. We remand for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

## Factual and Procedural Background

The parties married in December 2001 and separated in March 2021. No children were born of the marriage. In early July 2021, Wife filed a petition for dissolution of the marriage. One month later, Husband filed an answer and a cross-petition for dissolution of marriage. The trial was conducted on August 12, 2022. The following evidence was presented at trial.

Wife worked for 15 years of the 20-year marriage at Nucor Steel. When she quit in 2016, she cashed out her retirement and used it for household expenses and to pay off some debt. Wife then worked at D&L, a company located on a Nucor job site. She left that job because it was five days a week, making it difficult for her to attend a number of doctors' appointments that she had at that time. As of the date of trial, Wife was employed by the City of Steele, working Tuesday through Friday. She earned $14 an hour and was capable of working 40 hours a week, for an annual income of roughly $23,000.

In July 2020, Wife was diagnosed with breast cancer in her left breast and pre-cancerous cells in her right. As a result, she underwent two lumpectomy surgeries and 33 radiation treatments. Wife was advised that she had a greater chance of survival if she underwent a double mastectomy. Wife elected to undergo that surgery in January 2021. The parties separated as of March 24, 2021.

2

In January 2022, the parties received a check from Shelter Insurance for around $15,000 to repair storm damage to the roof of the marital home. Husband testified that, after the insurance check was deposited in the parties' joint account, Wife signed two checks on that account for cash for around that same total. Husband did not know what Wife did with the cash. Husband requested that he receive half the total amount of the insurance proceeds.

Husband started working at Nucor eight years before the marriage and continued to work there throughout the marriage. His 2021 federal tax return, filed as a single individual, showed that Husband's gross income was $123,239. More recent 2022 paystubs showed that Husband earned a gross amount per week ranging from $1,616 to $3,155, depending on overtime and bonuses.

Husband had a 401(k) plan. A portion of that plan was his separate property (valued by the trial court at 10% of the total). The other 90% of the 401(k) plan was marital property. Husband agreed the 401(k) plan had a value of over $308,000 at the time of trial. Husband contended it should be valued at the time of the parties' separation on March 24, 2021. At that time, the value was approximately $272,000. Wife requested that she be awarded half, or her equitable portion, of Husband's retirement valued at the time of trial.

The parties' marital property also included real and personal property. The real property consisted of the parties' marital home and two adjoining lots on either side, identified as the North Lot and South Lot. The personal property included: (1) a Dodge Journey driven by Wife, a Dodge Ram, a Toyota Tacoma and a Harley Davidson motorcycle; (2) a Forrest River camper; (3) a Kubota Tractor, equipment and trailer; and (4) two AR rifles, a Barrett shotgun, and a single-shot shotgun. With respect to the real and personal marital property, Wife requested that she be awarded the marital home, the Dodge Journey,

3

and three guns.[1]  Based on Wife's health issues, she requested maintenance of $600 a month for two years.  Wife requested that amount to cover the cost of COBRA insurance so she would not have to change physicians, including her oncologist and surgeon.[2]

Insofar as relevant here, the trial court's judgment:  (1) valued Husband's 401(k) at the time of the parties' separation, rather than at the time of trial; (2) awarded Husband all the real property and personal property, including all the guns and vehicles, except for the Dodge Journey; (3) awarded Wife the Dodge Journey and half the value of the other marital property, less half the marital debt, for a total of $131,883, payable from Husband's 401(k). The marital debt deducted from Wife's share included half the insurance proceeds totaling $7,587, which the court found "was appropriated" by Wife.  The court made no findings that either party engaged in misconduct during the marriage.  Finally, the court denied Wife maintenance.

Wife filed a motion to set aside and/or amend the judgment, but that motion was denied.[3]  This appeal followed.  Additional facts will be included below as we address Wife's four points on appeal.

---

[1]  Wife requested one of the AR rifles, the Barrett shotgun, and the single-shot shotgun, which she said belonged to her son and should be returned to him.

[2]  "COBRA" is an acronym for the "Consolidated Omnibus Budget Reconciliation Act," which allows qualified workers to keep their group health insurance for a limited time after a change in eligibility.  U.S. Department of Labor, Employee Benefits Security Administration,  dol.gov/agencies/ebsa/laws-and-regulations/laws/cobra (last visited Mar. 26, 2024); *see, e.g.*, **Golden Rule Ins. Co. v. R.S.**, 368 S.W.3d 327, 331 (Mo. App. 2012).

[3]  Wife's motion presented each of the issues challenged on appeal and therefore preserved those issues for our review.  **In re Marriage of Adams**, 414 S.W.3d 29, 37 (Mo. App. 2013).

**Standard of Review**

The standard of review in a dissolution of marriage case is the same as that used for any other court-tried case. ***In re Marriage of Wood***, 262 S.W.3d 267, 270 (Mo. App. 2008); *see **Lollar v. Lollar***, 609 S.W.3d 41, 45-46 (Mo. banc 2020). Rule 84.13(d) and ***Murphy v. Carron***, 536 S.W.2d 30, 31-32 (Mo. banc 1976), require this Court to affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. ***Lollar***, 609 S.W.3d at 45-46.[4] "We review questions of law decided in a court-tried case *de novo*." ***O'Connell v. Deering***, 631 S.W.3d 649, 652 (Mo. App. 2021). Further, our review is for prejudice, not mere error, and we will not reverse any judgment unless the error materially affects the merits of the action. ***Lee v. Lee***, 680 S.W.3d 501, 505 (Mo. App. 2023).

**Discussion and Decision**

Wife's first point contends the trial court misapplied the law in valuing Husband's 401(k) at the time of the parties' separation, instead of the time of trial. The following facts are relevant to this point.

In November 2021, the trial court set the trial date for April 27, 2022. In January 2022, Husband served Wife written interrogatories, which she did not answer before a pretrial hearing held on April 5, 2022. According to the docket entry on that date, the court ordered: "By agreement, outstanding discovery to be filed by April 8, 2022." The next entry, on April 8, 2022, specified that Wife's answers to interrogatories were so filed. Later

---

[4] All rule references are to Missouri Court Rules (2023). All statutory references are to RSMo (2016).

that month, due to a scheduling conflict, the trial court cancelled the April 27th trial date. Trial in the matter was reset to August 12, 2022, and was held on that date.

Wife testified that, at the time of trial, Husband's 401(k) was valued at $308,726. Husband agreed with that recent value. He testified on direct examination that his 401(k) should be valued at the time of the parties' separation on March 24, 2021, when it was valued substantially less, at $271,931. According to Husband, the lower value was appropriate because Wife was "benefitting from the length of time that it took … to get divorced." Questioned by his attorney, Husband testified as follows:

Q. As of yesterday your 401K account was $308,000, in itself; isn't that correct?

A. Yes.

Q. Do you think it's fair and equitable that she should get a portion of your 401K as of yesterday?

A. No.

Q. Do you think it's fair and equitable that she should get a portion of your 401K valued as of the date of separation; is that correct?

A. Yes.

Q. Because, otherwise she's benefitting from the length of time that it took you to get divorced, isn't that right?

A. Yes.

Q. She shouldn't make money by dragging a divorce out; isn't that right?

A. Yes.

The trial court agreed with Husband and valued his 401(k) at $271,931.

Wife contends the trial court misapplied the law in valuing Husband's 401(k) as of the date of the parties' separation instead of the date of trial because the ruling does not

follow the statutory language of § 452.330 and relevant case law.[5]  According to Wife, the trial court's March 2021 valuation was not supported in law or in fact.  For the following reasons, we agree.

First, the law is well settled that "the appropriate date for valuing marital property in a dissolution proceeding is the date of trial[.]"  ***Olofson v. Olofson***, 625 S.W.3d 419, 438 (Mo. banc 2021).  This is because "valuation of property should be reasonably proximate to the date the division of property is to be effective."  ***Tarneja v. Tarneja***, 164 S.W.3d 555, 562-63 (Mo. App. 2005).  When the division of property is *not* reasonably proximate to the time of trial, however, "the valuation date should be the date of the division of property." ***Wright v. Wright***, 1 S.W.3d 52, 57 (Mo. App. 1999).  In such cases, "the court should hold another hearing to determine the value of the marital property at the time of its division." ***Id***. at 58; ***Olofson***, 625 S.W.3d at 438; *see* ***McCallum v. McCallum***, 128 S.W.3d 62, 66 (Mo. App. 2003) (a later hearing appropriate when "[m]arket conditions and changing economic circumstances can change the value of assets that were valued months earlier"); *see, e.g.*, ***Morse v. Morse***, 80 S.W.3d 898, 905-07 (Mo. App. 2002) (valuation of 401(k) and pension six months before entry of judgment was not reasonably proximate to date of distribution).  Here, there is no question that the 401(k) valuation in March 2021 – nearly seventeen months earlier than the August 2022 trial – was already stale by the time of trial.

Second, Husband cites no authority to support the court's valuation at the time of the parties' separation except a single case that is factually distinguishable.  Husband relies on ***Janet v. Janet***, 638 S.W.3d 570 (Mo. App. 2021), where the trial court valued certain marital

_____

[5]  Section 452.330 defines "marital property" as "all property acquired by either spouse subsequent to the marriage[.]"  § 452.330.2.  There was no dispute that Husband's 401(k) was marital property at the time of trial.

property earlier than the trial date due to COVID-19. *Id*. at 581. The court valued the property at a higher, pre-COVID amount in December 2019, finding that amount more accurately reflected the property's value than a later, diminished value at the time of trial in April 2020. *Id*. at 580-81. The western district of this Court agreed and held the trial court acted within its discretion arriving at its valuation, which was supported by the evidence. *Id*. at 581. That is not what happened here. Unlike ***Janet***, there is no evidence that suggested the earlier, lower valuation in March 2021 more accurately reflected the 401(k)'s value. It was quite the opposite here. The 401(k)'s later, higher value of $308,727 at the time of the August 2022 trial was supported by both parties' testimony, and there was no dispute that the higher amount more accurately reflected its value.

Lastly, Husband's argument to value his 401(k) at the time of the parties' separation was based on a false premise. Husband initially agreed the 401(k)'s value at the time of trial was as Wife testified, over $308,000. Consequently, there was no conflicting evidence as to the value of the 401(k) at the time of trial. Further, Husband did not argue that the higher amount did not accurately reflect its value. Instead, Husband argued his 401(k) should be valued at the time of separation because Wife "stalled" in providing her answers to interrogatories and "shouldn't make money by dragging a divorce out[.]" That argument is not only irrelevant to an accurate valuation, it is patently false. The record is clear – the later trial date in this case had nothing to do with Wife's early delay in answering interrogatories. The nearly four-month delay, from April to August, was due entirely to a scheduling conflict by the trial court.

For all these reasons, we agree with Wife that the trial court misapplied the law in valuing Husband's 401(k) at the time of the parties' separation, rather than at the time of

trial.  This error was prejudicial because:  (1) Husband's 401(k) plan was the most valuable marital asset; (2) the trial court undervalued that asset by $36,795; and (3) the trial court used the incorrect value in dividing the 401(k) plan as Husband's separate property and as the parties' marital property.  *See, e.g.*, **McCallum**, 128 S.W.3d at 67 (citing cases in which the valuations of a 401(k) plan, a volatile asset, were stale after five, six and eight months). Because the date of valuation of Husband's 401(k) plan was not reasonably proximate to the effective date of distribution, we vacate the portion of the judgment dividing the parties' separate and marital property.

The case is therefore remanded for the trial court to:  (1) receive updated evidence of the value of the 401(k) plan; (2) revalue the share of the plan awarded to Husband as his separate property; (3) receive updated evidence on the value of the other marital property; and (4) divide all of the parties' marital property again, considering the economic circumstances of each spouse at the time of the new marital property division.  *See, e.g.*, § 452.330.1(1) (requiring the court to consider the economic circumstances of each spouse at the time the division of property is to become effective); **Olofson**, 625 S.W.3d at 438 (on remand, the circuit court would need to consider the current value of the marital property, rather than its value as of the date of the dissolution); **Morse**, 80 S.W.3d at 905-06 (because the 401(k) valuation was stale, the case was remanded for the trial court to receive updated evidence of the value of the 401(k) and to consider the current economic circumstances of each spouse in redividing the marital property); ***In re Marriage of Rickard***, 818 S.W.2d 711,

9

715 (Mo. App. 1991) (holding the proper date for valuation of marital property was not the date of dissolution, but the date of retrial after remand).[6]

Accordingly, we grant Wife's first point. The prejudicial error committed by the trial court in valuing the 401(k) plan, which necessitated the vacation of the property divisions, also requires us to vacate the denial of maintenance challenged in Point 2. The first step in deciding maintenance is for the trial court to decide whether the spouse seeking maintenance lacks sufficient property, *including marital property apportioned to him/her*, to provide for his/her reasonable needs. *See* § 452.335.1(1); ***Valentine v. Valentine***, 400 S.W.3d 14, 20 (Mo. App. 2013). Because the division of marital property has been vacated, the maintenance analysis will have to be performed by the trial court on remand. Until the marital property has been revalued and redivided, and the parties' economic circumstances are reassessed, there is no way to know how much marital property Wife will receive or whether it will assist her in meeting her reasonable needs. Likewise, Points 3 and 4 are moot because they involve issues relating to the prior division of marital property, which has been vacated.

The cause is remanded for further proceedings consistent with this opinion.

JEFFREY W. BATES, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, J. – CONCUR

BECKY J.W. BORTHWICK, J. – CONCUR

---

[6] Our review revealed an error to avoid on remand in calculating Wife's share of the 401(k). After the court awarded Husband his pre-marital share of 10% of the 401(k), the court stated the remaining 90% of the 401(k) was marital property to be split 50/50. But that did not happen. Instead, the court used the total value of the 401(k) and awarded Husband 60% and Wife 40%, which undervalued Wife's marital share by thousands of dollars.